PATRICK DONNELLY *vs.* BOSTON CATHOLIC CEMETERY ASSOCIATION.

Suffolk.    November 15, 1887. — February 29, 1888.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Public Charity — Cemetery Corporation — Negligence.*

A cemetery corporation, which voluntarily uses its funds for objects akin to the purposes of its organization, is not a public charity, but is liable to the proprietor of a grave for the negligent burial of a stranger therein.

TORT for negligently burying the body of a stranger in a grave belonging to the plaintiff. Trial in the Superior Court, before *Aldrich*, J., who ordered a verdict for the defendant, and reported the case for the determination of this court as follows:

It appeared that the defendant was specially incorporated by the St. of 1851, c. 292, " for the purpose of establishing and perpetuating a place for the burial of the dead," subject to the St. of 1841, c. 114,* and by subsequent legislation was author-

---

* The sections material to this case are as follows:

" Section 3. Every such corporation may take and hold, by purchase or otherwise, so much real and personal estate as may be necessary for the objects of their organization ; and all such real and personal estate shall be applied exclusively to purposes connected with, and appropriate to, the objects of such organization.

" Section 4. Every such corporation shall have authority to lay out the real estate which they may hold in suitable lots or subdivisions, and to grant and convey to any person or persons the sole and exclusive right of burial, and of erecting tombs or cenotaphs, in any such designated lot or subdivision, and of ornamenting the same, upon such terms and conditions, and subject to such regulations as said corporation shall prescribe.

" Section 5. The lots in said cemetery which may be granted as aforesaid shall be held indivisible, and upon the decease of any proprietor, the heirs at law or devisees of such proprietor, as the case may be, shall be entitled to all the privileges of membership; provided, however, that if there be more than one heir or devisee of any lot, they shall be held to give in writing, within nine months from the decease of such proprietor, to the clerk of said corporation, which of said heirs or devisees shall represent said lot ; and in case said heirs or devisees shall fail so to do, the board of trustees shall enter of record which of said heirs or devisees shall represent said lot, and vote at the meetings of said corporation, until said heirs or devisees shall designate as aforesaid."

ized to hold real and personal estate for the purposes for which it was established to the amount of $132,500; that it had no capital stock, issued no certificates of shares, and paid no dividends or any profits; that no member of the corporation, by virtue of his membership, received any pecuniary benefit whatever from the association; that all of the money received by the corporation, whether from the sale of graves or otherwise, was exclusively used for ornamenting the grounds, burying the poor, giving graves to public institutions, and carrying out the purposes for which the corporation was formed; that when persons died without leaving sufficient funds for burial, the corporation gave graves, and furnished the coffin and hearse, and in case of the death of any of the inmates of public and charitable institutions, the graves were, upon application, furnished for nothing; and that this had been the character and course of the association from its organization.

The plaintiff, in 1878, purchased a grave from the defendant for seven dollars, the deed of which entitled him and his heirs and assigns to the grave as a place of burial, and contained the following conditions: "that said lot shall not be transferred without the consent of the trustees; shall be subject to the regulations made, or to be made, in the care and management of said cemetery by the trustees, who shall also have the right to prevent the erection of any offensive or improper monument or inscription thereon; and shall retain the right to enter any lot or lots for the removal of anything objectionable; that no remains shall be deposited therein for hire; and that persons dying in drunkenness, duel, or by self-destruction, unbaptized, non-Catholics, or otherwise opposed to the Catholic Church, shall not be there interred."

The plaintiff had successively buried his father and one of his children in this grave, and in March, 1884, brought the remains of his wife for interment in the same grave. Upon the arrival of the funeral procession at the grave, there appeared upon the side of the grave, which had previously been opened by a grave-digger in the employ of the corporation, two small coffins, one of which bore the name of John McDonald. The plaintiff testified that no John McDonald had ever been buried in his grave with his consent, and offered testimony tending to show that

this body of John McDonald, and the coffin containing the same, had been negligently buried by the employees of the corporation in his grave. Among other testimony thus put in by the plaintiff, he offered evidence to show that, at the time of the burial of his wife, there were in the possession of the defendant no books of record which would enable its officers (independently of an actual examination of the grave, or a search through the day-book of daily interments since the purchase of the grave) to determine in all cases, without considerable delay, who might be buried in any specified single grave, and that there were not, at the time of the burial of the plaintiff's wife, any regulations or orders of the corporation requiring or directing the keeping of such records.

The defendant contended, and offered testimony to show, that the coffin and body of John McDonald had never been buried in the plaintiff's grave, or if so buried such burial was not made by any person for whom the defendant was responsible.

No claim was made or evidence offered by the plaintiff that there was any negligence in the employment or selection by the corporation of the grave-digger above referred to, or any of its servants or employees. There was evidence tending to show that some sixty thousand bodies were buried in the cemetery of the defendant at the time of the trial; and it also appeared that the agent or superintendent of the corporation who had charge of the cemetery received a salary of $300 per annum, and that the grave-diggers, who were employed by him, also received pay for their services from the corporation. It also appeared, that when a grave had been sold, and the same was subsequently opened at the request of the owner for the purpose of a fresh interment, a charge of three dollars was made by the corporation for such opening; which sum, however, was devoted, with the other receipts of the corporation, to carrying out the general purposes of the corporation, as above stated.

If the ruling of the judge was correct, judgment was to be entered on the verdict; if the ruling was incorrect, judgment was to be entered for the plaintiff, by agreement of parties, in the sum of $250.

*J. L. Eldridge*, for the plaintiff.

*C. L. B. Whitney*, for the defendant.

HOLMES, J. There was evidence warranting a verdict for the plaintiff if the defendant was subject to the ordinary rules of liability. We are of opinion that it was subject to those rules, and that by the terms of the report judgment must be entered for the plaintiff. *McDonald* v. *Massachusetts General Hospital*, 120 Mass. 432, was decided on the ground that the defendant was a public charitable institution under the laws of the Commonwealth, and *Benton* v. *Trustees of Boston City Hospital*, 140 Mass. 13, on the ground that, if it was not within the former decision, then the defendant was a mere agent to perform a duty which the city of Boston had assumed solely for the benefit of the public, under the authority of a statute; that the city of Boston would not be liable under the rules peculiar to municipal corporations stated in *Tindley* v. *Salem*, 137 Mass. 171, and *Hill* v. *Boston*, 122 Mass. 344; and that therefore a mere statutory agent without property intervening between the city and the actual wrongdoer was also free from liability.

The latter ground has no application here. There is no pretence that the defendant is acting as an agent for the city. We think that there is equally little ground for calling it a charitable corporation. Assuming for the sake of argument that it would have no right to declare dividends to its members in case of realizing profits, there is nothing in the charter which compels the application of any part of its funds to charitable uses. It would be acting strictly within its powers if it sold all its lands for full price. The purpose of the charter is to secure permanent care of graves, and such advantages to the persons interested as may be deemed incident to burial in such a cemetery. The beneficiaries are a definite number of persons clearly pointed out by law. St. 1841, c. 114, §§ 4, 5. *Old South Society* v. *Crocker*, 119 Mass. 1, 23. See *Evergreen Cemetery Association* v. *Beecher*, 53 Conn. 551; *Matter of Deansville Cemetery Association*, 66 N. Y. 569.

The provision in the St. of 1841, c. 114, § 3, that all the real and personal estate of the corporation "shall be applied exclusively to purposes connected with, and appropriate to, the objects of such organization," does not mean to exempt its property, and thus the corporation, from ordinary civil liabilities. There is a similar restriction, express or implied, in the case of a railroad.

The fact that the funds received were actually applied to a considerable extent in charity, is no more material than evidence of a similar application of a part of his income by a private citizen would be, in a suit against him.

*Judgment for plaintiff.*