PROPRIETORS OF THE CEMETERY OF MOUNT AUBURN *vs.*
MAYOR AND ALDERMEN OF CAMBRIDGE & another.

Suffolk.    March 7, 1889. — September 5, 1889.

Present: MORTON, C. J., FIELD, W. ALLEN, & HOLMES, JJ.

*Sewer Assessment — Burial Ground — Exemption from Taxation.*

A sewer assessment cannot be laid, under the Pub. Sts. c. 50, §§ 4, 7, upon a ceme-
tery corporation's land, which, by its charter, is perpetually set apart as a
burial place for the dead, and can neither be sold, used for profit, nor appro-
priated to any other purpose.

W. ALLEN, J.    This is a petition for a writ of certiorari to
quash the proceedings of the mayor and aldermen of the city of
Cambridge in laying a sewer assessment on the petitioner's land,
and to restrain the collector of that city from selling the land
assessed.    The respondents demurred, on the ground that the
petitioner was not entitled to the relief sought.

The Pub. Sts. c. 50, § 1, authorize the proper officers of towns
and cities to make main drains and common sewers, and § 4 pro-
vides that " every person who enters his particular drain into
such main drain or common sewer, or who by more remote means
receives benefit thereby for draining his cellar or land," shall
pay to the town or city a proportional part of the charge for
making the sewer, to be assessed by the mayor and aldermen ;
§ 7 provides that the city council of a city, or the voters of a
town, may adopt a system of sewerage for the whole or a part
of its territory, and may provide that assessments under § 4 shall
be made upon owners of estates within such territory by a fixed
uniform rate, based upon the estimated average cost of all the
sewers therein, according to the frontage of such estates on any
street where the sewer is laid, or according to the area of such
estate within a fixed depth from such street, or according to both
frontage and area ; § 8 provides that, instead of the assessment
under § 4, it may be determined that every person who uses the
sewer shall pay therefor a reasonable sum, to be determined by
the proper officers.

The mayor and aldermen of Cambridge made a sewer through Mount Auburn Street, on which Mount Auburn Cemetery abuts, and assessed the cost upon the owners of estates on the street, under the Pub. Sts. c. 50, § 7, and included the petitioner in the assessment as owner of the cemetery. The only question is, whether it is liable to be assessed. The St. of 1831, c. 69, authorized the Massachusetts Horticultural Society to dedicate and appropriate any part of the real estate owned by it as and for a rural cemetery or burying-ground, and for the erection of tombs, cenotaphs, and monuments for and in memory of the dead, and for that purpose to lay out the same in burial lots, and to plant and embellish the same with shrubbery, flowers, trees, walks, and other rural ornaments; and provided that, "whenever the said society shall so lay out and appropriate any of their real estate for a cemetery or burying-ground as aforesaid, the same shall be deemed a perpetual dedication thereof for the purposes aforesaid, and the real estate so dedicated shall be forever held by the said society in trust for such purposes and for none other." It was authorized to grant rights of burial in the lots into which the land should be divided, "and every right so granted and conveyed shall be held for the purposes aforesaid, and for none other, as real estate, by the proprietor or proprietors thereof, and shall not be subject to attachment or execution." Certain land in Cambridge was dedicated and appropriated as a cemetery under this statute. By the St. of 1835, c. 96, the petitioner was incorporated and authorized to receive a conveyance of the cemetery from the Massachusetts Horticultural Society, to be held upon the same trusts, and for the same purposes, and with the same powers and privileges, as set forth in the St. of 1831, c. 69. The land which was conveyed by the Massachusetts Horticultural Society to the petitioner under this statute is all laid out in lots, with driveways, walks, and appendages necessary to its use as a cemetery, and in a large portion of it burial rights have been sold. By the act of incorporation, the cemetery was exempted from "all public taxes," and it was required that lots should be sold as fast as practicable, and that the proceeds of sales retained by the corporation should be devoted to the preservation, improvement, and enlargement of the cemetery, and the incidental expenses thereof, and to no other purpose.

The assessment in question is a tax levied under the authority and the restrictions of the Constitution. *Dorgan* v. *Boston*, 12 Allen, 223. *Harvard College* v. *Boston*, 104 Mass. 470, 482. It is a public tax, in the sense that it is levied for a public object; it is a local tax, in the sense in which most public taxes are local, that it is limited to a certain locality; it differs from ordinary public taxes in that it is not levied upon the polls and estates within a municipality or a district in respect of public or common benefits, but upon particular lands in respect of a particular benefit received by them from the execution of a public object. Taxes voted by towns and cities for public ways and common sewers are for public objects, and are in every sense public taxes. When the construction of a particular way or sewer is not only for the public benefit, but is also of special benefit to particular lands, the whole or a part of the tax therefor may be levied upon the lands so specially benefited, and there are general statutes prescribing the occasions and the manner of assessing such taxes. Pub. Sts. cc. 50, 51. In the case of public ways the assessment on any land is limited to one half of the benefit to it; in the case of sewers, the whole or any part of the cost — except in the city of Boston, where at least one fourth of the expense must be borne by the city — may be assessed proportionally upon the lands benefited, either in proportion to the value of the land or to the quantity of the land.

At the time of the dedication of the Mount Auburn Cemetery and of the incorporation of the petitioner, there was no general statute which authorized public officers to construct drains and sewers. The St. of 1796, c. 47, and the Rev. Sts. c. 27, gave no such authority, and while the statute provided for the construction of main drains and common sewers by individuals, and provided that " every person who afterwards shall enter his particular drain into the same, or by any more remote means shall receive any benefit thereby for the draining of his cellar or land, shall pay to the owners " a proportional part of the expense of making and repairing the same, a drain so made was private property, and the statute could not be construed as authorizing a tax or compulsory assessment upon one who did not voluntarily accept the benefit of it. *Boston* v. *Shaw*, 1 Met. 130. *Downer* v. *Boston*, 7 Cush. 277. *Wright* v. *Boston*, 9 Cush. 233.

The St. of 1841, c. 115, made main drains and common sewers the property of cities and towns, and authorized municipal offi-- cers to make and maintain them in their respective towns and cities; § 2 provided that " every person who may hereafter enter his particular drain into any main drain or common sewer, so constructed as aforesaid, for the draining of his cellar or land, or in obedience to the by-laws or ordinances of the town or city, or who by any more remote means shall receive any benefit thereby for draining his cellar or land, shall pay to the town or city a proportional part of the charge of making and repair- ing such main drain or common sewer." This statute was to take effect only in towns and cities which accepted it. This provision was re-enacted in the Gen. Sts. c. 48, § 4, in the form in which it appears in the Pub. Sts. c. 50, § 4. The provision requiring the assent of towns and cities was repealed by the St. of 1869, c. 111.

The question before us is, not so much whether the Legisla- ture intended by the provision in the charter exempting from public taxes to exempt from assessments under general laws for betterments and benefits, — for such laws were then unknown, — as whether it was the intention of those laws, when subse- quently enacted, to include the cemetery in lands to be specially taxed under them. Other statutes provide for the drainage of meadows, swamps, or low lands. Rev. Sts. c. 115; Pub. Sts. c. 189. The statutes relating to main drains and common sew- ers were intended for the improvement of land for purposes of residence or business, and having a value for building purposes. The drainage of houses rather than of lands is intended. Neither the subject matter nor the language used indicates an intention that the statutes should apply to lands perpetually devoted by the Legislature to the use of a burial place for the dead, and which cannot be sold or used for profit. The word " estates," as commonly used, does not include such land. The remote benefit, by reason of which the special tax was author- ized to be imposed, must be understood to be a pecuniary benefit resulting from the increased market value of the land, and which cannot be predicated of land which has and can have no market value. *Downer* v. *Boston*, 7 Cush. 277. *Wright* v. *Boston*, 9 Cush. 233.

The land in question is perpetually devoted by law to the burial of the dead, and it cannot be sold or appropriated to any other use until the law shall be changed. It is true that a cemetery may be so situated that it may be benefited as a place of burial by drainage. But the question here does not arise from the actual or voluntary use of the sewer; that may be provided for under § 8 of the statute; the question is, whether the right to use the drain without the actual use can be taxed as a benefit to the land. There can be no benefit from the right without the use, unless in the increased value it gives to the land. In the case of land which may be used as building lots, the right to use the sewer in the future increases the present market value of the land. The proprietors of the cemetery can derive no benefit or advantage from the sewer except from its actual use, and they may be unable or unwilling ever to use it; and it can never be used by them in any way to increase the market value of the land. The use to which the land is irrevocably devoted renders it incapable of receiving the benefit intended by the statute. It is not necessary to decide what is affirmed by the petitioner, that the land is devoted to a public use. The question we are considering is not whether a public cemetery, which may be liable to be sold by a town, as the land upon which a court-house stands can be sold by a county, would be exempt from this assessment under the decision in *Worcester* v. *Worcester*, 116 Mass. 193; nor whether the land of a private cemetery, which may have been taken by the right of eminent domain, which is exempt from taxation, and across which a public way cannot be laid, or which cannot be taken for a public use without special authority of the Legislature (see Pub. Sts. c. 11, § 5, cl. 8; c. 82, §§ 16, 29), but which the legal and beneficial owners are at liberty to appropriate to general purposes, or to sell for such purposes, is exempt by the statute from taxes of this kind; but whether, when the Legislature had appropriated certain land for a burying-ground and forbidden that it should ever be sold or used for any other purpose, and had forbidden that moneys received from it should be devoted to any purpose except its preservation and improvement as a burying-ground, they intended that it should be taxed for the right to use a sewer laid out under the St. of 1841, c. 115, and

subsequent acts. As bearing upon this, the provisions of the Pub. Sts. c. 50, § 7, first enacted in the St. of 1878, c. 232, § 3, and the St. of 1879, c. 55, are to be considered. Under these provisions all the land assessed in the designated territory is to be assessed ratably in proportion to quantity, not to value. The tax must be proportional, and it is the intention of the statute to make it so. Under § 4 of that chapter the proportional benefit and tax were determined by the value of the land. The amendment embodied in § 7 apportioned the tax to the quantity of land, and was obviously applicable to land available as city or village lots, and for kindred purposes. It could not have been intended to enact that land which could be used only for purposes of burial of the dead should be deemed to be equally benefited by a street sewer as the same area of land in building lots on the same or any other street in the designated territory. Whether the use is regarded as public or not, the fact that the land is perpetually devoted to the purposes of burial, and cannot be sold or appropriated to other uses, distinguishes this case from *In re Deansville Cemetery Association*, 66 N. Y. 569, and *Donnelly* v. *Boston Catholic Cemetery Association*, 146 Mass. 163, and brings it within the reasons of the decision in *Evergreen Cemetery Association* v. *Beecher*, 53 Conn. 551, and *Evergreen Cemetery Association* v. *New Haven*, 43 Conn. 234.

The statute provides that assessments shall constitute a lien upon the real estate assessed, and may be levied by sale of such real estate. It is clear that the land of the petitioner was not "real estate assessed," within the meaning of this provision. The Legislature could not have intended to authorize a sale of the cemetery under this provision. It was perpetually appropriated by express legislative authority to the purposes of a burial ground; it was made exempt from taxation; it was to be divided into burial lots, the rights of which were to be sold as soon as practicable, and were exempt from taxation and from execution. St. 1841, c. 114, § 7. Rev. Sts. c. 97, § 22, cl. 7 (Pub. Sts. c. 11, § 5, cl. 8; c. 171, § 34, cl. 11). It was also protected from desecration or injury by penal statutes. Rev. Sts. c. 130, §§ 19, 21 (Pub. Sts. c. 207, §§ 47, 49). The land assessed has all been laid out, and a large portion of it has been sold in fee simple to different persons for the purposes of burial,

and bodies have been interred therein.   Whether the deeds conveyed the title to the land, or only a beneficial interest in it, is immaterial.   If the Legislature intended that the legal title should remain in the corporation, it did not intend that the graves of the dead should be sold to pay for drains and sewers for houses of the living.   See *Commonwealth* v. *Viall*, 2 Allen, 512; *Sohier* v. *Trinity Church*, 109 Mass. 1;  *Louisville* v. *Nevin*, 10 Bush, 549; *Lima* v. *Cemetery Association*, 42 Ohio St. 128; *State* v. *St. Paul*, 36 Minn. 529; *Buffalo Cemetery* v. *Buffalo*, 46 N. Y. 506; *Baltimore* v. *Green Mount Cemetery*, 7 Md. 517; *Brown* v. *Lutheran Church*, 23 Penn. St. 495 ; *Olive Cemetery Co.* v. *Philadelphia*, 93 Penn. St. 129.   There is no other way in which the tax can be collected, and as the provision made for collecting the tax does not apply to an assessment upon this land, the inference is strong that it was not intended that the land should be assessed.   *Roxbury* v. *Nickerson*, 114 Mass. 544. *Worcester* v. *Worcester*, 116 Mass. 193.

It was decided in *Worcester Agricultural Society* v. *Worcester*, 116 Mass. 189, that the provision of the Gen. Sts. c. 11, § 5, cl. 9, (Pub. Sts. c. 11, § 5, cl. 9,) exempting the estate of incorporated agricultural societies from taxation, does not include sewer assessments, and the same decision as to a highway assessment was made in *Seamen's Friend Society* v. *Boston*, 116 Mass. 181, in respect to the exemption in the same statute of property of charitable institutions.   Those exemptions are in the general tax law, which provides for the assessment and collection of taxes, and are held to apply to taxes to be assessed and collected under that law, and not to assessments for highways and sewers, which, though public taxes, are not assessed or collected under the general tax law, but under particular statutes.   There is an implied limitation of the restriction to the taxes which are the subject matter of the chapter, which does not exist in regard to the exemption in the charter of the petitioner.   A more marked distinction is, that real estate held by such societies receives the same benefit from roads and sewers as if owned absolutely by an individual.   It has a market value; it may be appropriated to any lawful use, and may be sold for such use, and it may be sold to pay the assessment.

Even if the words " all public taxes " in the act of incorpora-

tion are not held to include the special tax for sewers that was subsequently created, the provision at least shows a legislative disposition to be considered in finding its intention in the subsequent acts. We think it was not the intention of those acts that the petitioner's land should be assessed under them.

*Demurrer overruled.*

*G. Putnam & W. L. Putnam*, for the petitioner.
*C. J. McIntire*, for the respondents.