## LIABILITY FOR INJURY FROM FALL IN CEMETERY.

Common Pleas Court of Hamilton County.

ANNA WULFTANGE V. THE PROPRIETORS OF THE CEMETERY OF
SPRING GROVE.

Decided, September, 1913.

*Cemeteries—Proprietors of, Liable for Negligence of Agents and Servants—Right of Action for Injury from a Fall on an Icy Walk.*

In an action for damages brought against a cemetery association, by one who was injured while attending a funeral at the cemetery by falling upon a walk over which she was compelled to pass and which was rendered dangerous and slippery by an accumulation of ice and snow, the defense does not lie that the association is such an institution of public charity as to exempt it from liability for negligence of its agents and servants, notwithstanding it has no capital stock and no profits can accrue to its members.

*Dolle, Taylor & O'Donnell,* for demurrer.
*Worthington & Strong,* contra.

GEOGHEGAN, J.

Heard on demurrer to third defense of answer.

The petition seeks to recover from the Proprietors of the Cemetery of Spring Grove, a corporation under the laws of Ohio, for damages sustained by the plaintiff while attending a funeral at the cemetery, it being alleged that the defendant carelessly and negligently suffered ice and snow to accumulate on a walk over which she was compelled to pass and that by reason of the dangerous and slippery condition caused by said ice and snow she was caused to fall and was injured.

Defendant in its answer admits that it is an Ohio corporation, incorporated under a local act passed January 21, 1845, and another local act passed March 21, 1849, and for a third defense sets forth the following:

"Defendant says that it is and always has been a public and charitable corporation; and that it was incorporated and organized, and is and always has been operated exclusively for the

purpose of providing a place for the proper interment and repose of the dead; that it has not, never has had, and can not have any capital stock; that it never has declared and can not declare dividends, and never has made and can not make profits for its members; that its funds and income are, and always have been, used exclusively for acquiring land for its cemetery, for laying out and maintaining the same, including the construction and repair of the buildings necessary therefor, and for preserving, protecting and embellishing said cemetery and the avenues leading thereto, and for paying the necessary expenses of the corporation, and that they will have to be used in the future for the same purposes.

"Defendant further says that any person may become a member of this corporation by becoming the owner of one or more cemetery lots as laid off by its board of directors, and that the owners of such lots have a right in fee simple thereto, exempt from execution, attachment, taxation, or any other claim, lien, or process whatever, for the sole purpose of interment under the regulations of the corporation, and with the assent of its board of directors may convey such lots, or any portions thereof, for such purpose; that the owners of said lots have the right of interment and perpetual repose both for their own bodies after death, and for any other bodies which they desire to have interred therein; and that all persons alike may thus acquire the lots and the rights and privileges aforesaid, so long as the corporation has land available for the purpose.

"Defendant admits that plaintiff had been present at the funeral services which had been held in its chapel in connection with the interment in said cemetery of the body of her friend, Mrs. Mary Garvey, as stated in her petition, and says that any injuries received by said plaintiff after leaving said chapel, were caused by her slipping and falling upon the sidewalk mentioned in said petition. And defendant further says that it had given its employes instructions to remove all ice and snow from said sidewalk within a reasonable time after their accumulation thereon, which instructions were in full force and effect at the time plaintiff received her injuries, and had been for a long time prior thereto."

It will be observed from the reading of the language of the third defense that the defendant is relying upon that principle of law which relieves charitable institutions under certain circumstances from liability, under the doctrine of *respondeat superior*, for the negligent and careless acts of its agents and serv-

The question then is, is the defendant, assuming for the purposes of the demurrer that the allegations contained in the third defense aforesaid are true, such an institution of public charity as to be exempt from liability for negligence of its agents and servants?

That it is not such has been expressly held by the Supreme Court of Massachusetts, in the case of *Donnelly* v. *Boston Catholic Cemetery Association*, 146 Mass., 163. In that case it appeared that the defendant was incorporated under a special act for the purpose of establishing and perpetuating a burial place for the dead; that it had no capital stock, issued no certificates of shares, and paid no dividends or profits; that no pecuniary benefit whatever was received from the association; that all money received by the association from the sale of graves or otherwise was exclusively used for ornamenting the grounds, burying the poor, giving graves to public institutions, and carrying out the purposes for which the corporation was formed; that persons who were too poor to furnish funds for the burial of their deceased relatives were furnished with coffins and a hearse, and that upon the deaths of inmates of public and charitable institutions, the graves were, upon application, furnished for nothing. The plaintiff sought in that case to recover from the defendant for negligence of its employes in burying another person in a grave upon his lot, and the defense was made to the action that there could be no liability for this negligence under the rule that the doctrine *respondeat superior* did not apply to charitable institutions. The court in its opinion, rendered by Justice Holmes, after discussing the various Massachusetts cases wherein the doctrine of non-liability of charitable institutions was laid down and asserting that there could be no pretense that the defendant was acting as an agent for the city, uses the following language:

"We think that there is equally little ground for calling it a charitable corporation. Assuming for the sake of argument that that it would have no right to declare dividends to its members in case of realizing profits, there is nothing in the charter which compels the application of any part of its funds to charitable uses. It would be acting strictly within its powers if it sold all its lands for full price. The purpose of the charter is to secure

permanent care of graves, and such advantages to the persons interested as may be deemed incident to burial in such a cemetery. The beneficiaries are a definite number of persons clearly pointed out by law. St. 1841, c. 114, Sections 4, 5; *Old South Society* v. *Crocker*, 119 Mass., 1, 23; See *Evergreen Cemetery Association* v. *Beecher*, 53 Conn., 551; *Matter of Deansville Cemetery Association*, 66 N. Y., 569.

"The provision in the St. of 1841, c. 114, Section 3, that all the real and personal estate of the corporation 'shall be applied exclusively to purposes connected with, and appropriate to, the objects of such organization,' does not mean to exempt its property, and thus the corporation, from ordinary civil liabilities. There is a similar restriction, express or implied, in the case of a railroad.

"The fact that the funds received were actually applied to a considerable extent in charity, is no more material than evidence of a similar application of a part of his income by a private citizen would be, in a suit against him."

In my examination of the cases cited both by counsel for plaintiff and counsel for defendant, I have not found a case wherein a cemetery association has been exempted from liability under the doctrine that a charitable institution is not liable for the tortious acts of its servants or agents. In fact, this doctrine of non-liability seems by the better weight of later opinion to have been limited to actions by those who are beneficiaries of the charitable trust exercised by the corporation.

In *Horden* v. *The Salvation Army*, 199 N. Y., 233, decided September, 1910, the court, in syllabus 1, says:

"The beneficiary of a charitable trust may not hold the corporation, administering the trust, liable for the neglect of its servants, but this immunity does not affect the rights of those who are not such beneficiaries."

The court, in its opinion in that case (page 238), quotes the language of Judge Lowell of the United States Circuit Court, in the case of *Powers* v. *Massachusetts Homeopathic Hospital*, 47 C. C. A., 122, 109 Fed., 294, as follows:

"One who accepts the benefit either of a public or private charity enters into a relation which exempts his beneficiary from liability for the negligence of his servants, in administering the charity; at any rate, if the benefactor has used due care in select-

ing those servants. * * * It would be intolerable that a good Samaritan, who takes to his home a wounded stranger for surgical care, should be held personally liable for the negligence of his servant in caring for that stranger. Were the heart and means of that Samaritan so large that he was able, not only to provide for one wounded man, but to establish a hospital for the care of a thousand, it would be no less intolerable that he should be held personally liable for the negligence of his servant in caring for any one of those thousand wounded men. * * * If, in their dealings with their property appropriated to charity, they create a nuisance by themselves or by their servants; if they dig pitfalls in their grounds and the like, there are strong reasons for holding them liable to outsiders, like any other individual or corporation. The purity of their aims may not justify their torts; but if a suffering man avails himself of their charity he takes the risk of malpractice, if their charitable agents have been carefully selected.''

This same distinction was pointed out by the Supreme Court of Michigan, in the case of *Albin Bruce* v. *Central Methodist Episcopal Church*, 147 Mich., 230, wherein the defendant, a regilious corporation, was held liable for injuries to a workman engaged in repairing its property through the negligence of its servant in furnishing an unsafe scaffold. In that case both Carpenter, Chief Justice, and Ostrander, Judge, in careful and well-considered opinions, after tracing the history of the doctrine that a charitable institution is not liable for the torts of its servant, come to the inevitable conclusion that corporations administering a charitable trust, like all other corporations, are subject to the general laws of the land, and can not therefore claim exemption from responsibility for the torts of their agents, unless that claim is based on a contract with the person injured by such tort, and they rest the doctrine of non-liability upon the ground that the beneficiary of such charitable trust enters into a contract whereby he assumes the risk of such tort.

The same distinction is also found in the case of *Kellogg* v. *Church Charity Foundation*, 203 N. Y., 191, wherein it is held (syllabus 1):

''A charitable corporation is not extempt from liability for a tort against a stranger because of the fact that it holds its property in trust to be applied to purposes of charity.''

These views are in harmony with the decision of our own Supreme Court, in the case of *Taylor, Admr.,* v. *The Protestant Hospital Association,* 85 Ohio State, 90, wherein a public charitable hospital was held not liable for injuries to a patient of the hospital resulting from negligence of a nurse employed by it.

It is true that the Supreme Court in that case does not specifically refer to the distinctions pointed out above, but the fact is that in that case there was that same contract relation between the patient and the hospital which resulted in the distinction between liability and non-liability pointed out by the Circuit Court of Appeals, the Court of Appeals of New York and the Supreme Court of Michigan, *supra.*

While there is some doubt as to the application of this distinction to the case of one who, as in the case at bar, was a visitor and whose admission to the cemetery was by and under the right of the relatives of the one interred to enter the cemetery, nevertheless, the decision of the Supreme Court of Massachusetts, in the case of *Donnelly* v. *Boston Catholic Cemetery Association, supra,* in the absence of authority to the contrary, would be conclusive of the case at bar.

However, in examining this subject, we can not overlook the case of *City of Toledo* v. *Cone,* 41 Ohio State, 149, wherein the Supreme Court held a municipal corporation managing, controlling and regulating a cemetery through the means of a board of cemetery trustees, chosen by the electors of the corporation, under express powers granted by the Legislature, to be liable for the negligence of the superintendent of the cemetery toward one of the cemetery employes while engaged in the work of repairing a vault. It is true that in that case the Supreme Court did not discuss the question of the liability of persons or corporations engaged in works of public charity for the negligence of their servants, but, nevertheless, they held the city of Toledo liable in a case where the negligence occurred in and about work that was being done in a public cemetery. The Supreme Court, at page 165, says:

"The cemetery and vault were a source of benefit and advantage to the corporation, and involved the same responsibility for

their unsafe and improper management which pecuniary and proprietary interests entail upon natural persons.''

Certainly, if the city, in operating a cemetery, even though it may incidentally receive some pecuniary advantage in the operation thereof, is not engaged in such a work of public charity as to relieve it from liability for the negligent acts of its servants and agents, how can it be claimed that a private corporation, doing precisely the same kind of work, in the same manner, and receiving the same benefits, is a public charity such as is not liable for the negligent acts of agents and servants? While the Supreme Court holds the city liable upon the well known distinction between the exercise of a governmental function and that of a purely private nature, nevertheless, a liability on the part of the municipality in its purely private capacity must rest upon those same rules of law that apply to purely private persons or corporations, and if a purely private corporation would not be liable under the doctrine of *respondeat superior* because of the nature of the work it performs, certainly then the municipality, acting as a private proprietor, would not be liable for these very same reasons. There is no fundamental distinction between the liability of a private owner and the municipality acting as a private owner in the application of the doctrine *respondeat superior*.

The Supreme Court, in *Toledo* v. *Cone,* say further at page 165:

''The doctrine seems to be well sustained that where a municipal corporation owns property, and for its own benefit derives pecuniary emolument or advantage therefrom in the same way a private owner might, it is liable to the same extent as he would be for the negligent management thereof to the injury of others.''

It thus seems clear that a cemetery corporation is not such a charitable institution as would be exempted from the application of the rule *respondeat superior* for the negligent acts of its agents or servants, and even if there be some doubt as to whether or not it is such a charitable institution, it is still liable for the negligent or tortious acts of its servants toward those persons

who are not the direct beneficiaries of the trust and who therefore have not assumed the risk of such tortious acts.

The demurrer will therefore be sustained.