COLLECTOR OF TAXES OF BOSTON *vs.* PROPRIETORS OF THE
CEMETERY OF MOUNT AUBURN.

Suffolk.   December 12, 1913. — March 30, 1914.

Present: RUGG, C. J., HAMMOND, BRALEY, SHELDON, DE COURCY,
& CROSBY, JJ.

*Mount Auburn, Cemetery of. Tax. Cemetery. Corporation,* Domicil.

The Proprietors of the Cemetery of Mount Auburn, a corporation created by
St. 1835, c. 96, to hold and maintain a cemetery in the municipalities of Cam-
bridge and Watertown in the place known as Mount Auburn, and given power
to hold additional land by St. 1850, c. 271, and St. 1869, c. 179, is local in its
corporate essence, and is incapable of becoming an inhabitant of Boston so as
to subject its personal property to taxation there under St. 1909, c. 490, Part I,
§ 23; and the maintenance of an office in Boston, where its president, treasurer
and secretary perform their duties and keep their records and where the meet-
ings of the corporation and of its trustees are held, cannot be found to have
made Boston the domicil of the corporation.

CONTRACT by the collector of taxes of the city of Boston to
recover a tax of $24,600 assessed on December 20, 1912, upon
personal property of the defendant for the year 1912. Writ
dated June 5, 1913.

In the Superior Court the case was submitted to *Crosby, J.,*
upon an agreed statement of facts, including the facts stated
in the opinion. For many years the defendant had had offices
both at Boston and at the cemetery. The office of the president,
the treasurer and the secretary was and had been for many years
in Boston. Under an article of the rules and regulations of
the corporation stated meetings of the trustees were held at the
offices in Boston, and all meetings of the corporation and of the
trustees had been held there. These offices consisted of three
rooms hired by the corporation in an office building, and were
occupied regularly by the secretary, the treasurer and a clerk.
The secretary kept there the records of the meetings of the cor-
poration and of the trustees, and the treasurer kept his books of
account there.

The defendant asked the judge to make the following rulings:
"1. On all the evidence this action cannot be maintained.

"2. The defendant is not an inhabitant of Boston.

"3. The plaintiff is not entitled to recover interest from November 1, 1912.

"4. The plaintiff is not entitled to recover any interest."

The judge refused to make the first, second and fourth rulings requested, made the third ruling, and found on the agreed statement of facts that the defendant was an inhabitant of Boston and that the plaintiff was entitled to recover the amount of the tax assessed with interest thereon from the date of the writ; and thereupon reported the case for determination by this court. If either of the first two rulings requested should have been given, judgment was to be entered for the defendant; otherwise, judgment was to be entered for the plaintiff in the sum of $24,600, with interest from such date as this court might decide to be the proper one.

The case was argued at the bar in December, 1913, before *Rugg,* C. J., *Hammond, Braley,* & *De Courcy,* JJ., and afterwards was submitted on briefs to all the justices except *Loring,* J.

*A. Hemenway,* (*H. Wheeler* with him,) for the defendant.

*J. P. Lyons,* for the plaintiff.

RUGG, C. J. This is an action to recover taxes assessed by the city of Boston upon personal property of the defendant. The tax was laid upon the defendant as an "inhabitant" of Boston. St. 1909, c. 490, Part I, § 23. The defendant was incorporated by St. 1835, c. 96, whereby it was authorized to take and hold "the garden and cemetery at Mount Auburn, now held by the Massachusetts Horticultural Society, and any other lands adjacent thereto . . . upon the same trusts, and for the same purposes, and with the same powers and privileges, as the said Massachusetts Horticultural Society now hold the same." By § 1 of this act it is recited that the cemetery at Mount Auburn is in the towns of Cambridge and Watertown, in the county of Middlesex. The area which it might acquire for its purposes was increased by St. 1850, c. 271, and by St. 1869, c. 179. The real estate of the corporation is situated exclusively in Cambridge and Watertown, and up to the first of January, 1913, there have been thirty-eight thousand nine hundred and five interments. The character of the defendant corporation and the scope of its powers have been referred to in several cases.

In *Mount Hope Cemetery* v. *Boston,* 158 Mass. 509, it was said by Mr. Justice Allen at page 516: "The first private incorporated cemetery company, so far as ascertained, was the Massachusetts Horticultural Society, which by St. 1831, c. 69, was authorized to appropriate a part of its land for a rural cemetery or burying ground; to lay out lots for family and other burying places; and to grant exclusive rights of burial. This was the origin of the cemetery at Mount Auburn, and a new corporation was formed under St. 1835, c. 96, by the name of the Proprietors of the Cemetery at Mount Auburn, which succeeded to the property, powers, and privileges of the Horticultural Society in respect to the cemetery; with the restriction, however, that all of the proceeds of sales of lots which said proprietors were allowed to retain should be forever devoted and applied to the preservation, improvement, embellishment, and enlargement of the cemetery and garden, and the accidental [incidental] expenses thereof, and for no other purpose whatsoever. This would effectually cut off all right to declare dividends."

In *Mount Auburn Cemetery* v. *Mayor & Aldermen of Cambridge,* 150 Mass. 12, at page 16, it was said respecting the cemetery: "The land in question is perpetually devoted by law to the burial of the dead, and it cannot be sold or appropriated to any other use until the law shall be changed;" and further that "the Legislature had appropriated certain land for a burying-ground and forbidden that it should ever be sold or used for any other purpose, and had forbidden that moneys received from it should be devoted to any purpose except its preservation and improvement as a burying-ground."

It is apparent from these decisions that the defendant is not a business corporation. It has and can have no capital stock, and can neither declare dividends nor sell its cemetery property. It has been from the first a corporation established and developed under special legislation, and has been regarded, as appears from the quotations from opinions, as a corporation *sui generis.*

The domicil of a corporation depends upon various considerations. A business corporation commonly is said to have its residence where its chief corporate activities are conducted. Questions of nicety may arise where executive and financial operations are carried on in one place and the mechanical or manu-

facturing in another.   But the defendant is not a business corporation in any commercial sense.   Its land is devoted perpetually by its charter to the burial of the dead.   Thousands of people, in reliance upon this legislative declaration and pledge have performed the sacred rites of interment for kindred and friends in this plot of ground.   The defendant is prohibited by law from making any profit out of the sale of lots in its cemetery, but must forever expend its resources derived through this channel in the adornment and beautifying and improvement of its cemetery property in these two municipalities of Watertown and Cambridge.   It never can dispose of the land described in its charter nor divide its assets in whole or in part among its corporators.   Nor can it sell its land even for the purpose of removal to another location.   It is distinguished in some respects from the ordinary cemetery corporation of which types may be found in *Donnelly* v. *Boston Catholic Cemetery Association*, 146 Mass. 163, and *Milford* v. *County Commissioners*, 213 Mass. 162.   Its single function is to furnish a burial place for the dead at this particular place known as Mount Auburn.   The performance of its corporate function is indissolubly linked with this definite spot.   At least until there is a radical legislative change in the charter, rights and powers of the defendant, it is impossible for it to surrender the duties it has assumed respecting the maintenance and care of the cemetery at Mount Auburn.   The dominant purpose and single chief activity of this corporation as determined by its charter is to maintain a cemetery at Mount Auburn.   Statutes enacted subsequent to its original incorporation emphasize the connection of the defendant with the cemetery at Mount Auburn.   St. 1850, c. 271, enlarges its powers to purchase land for its corporate uses in Cambridge and Watertown. St. 1859, c. 197, refers to the "cemetery."   Its location for this purpose is fixed by the law by which it was created.   All the other corporate powers are conferred as ancillary to this main object, and have no reason for existence except in furtherance of the cemetery.

Its intrinsic characteristics show that the defendant in its corporate essence is local.   It is attached to a particular piece of land.   Its locality is affixed to the municipalities where its burial ground is, to which it is inseparably attached.   It is as inher-

ently local in its being as is a county, a city or town, or a parish. See *Trustees of Greene Foundation* v. *Boston,* 12 Cush. 54, 60. Dicey, Conflict of Laws, (1896) 154–156. The part of its affairs which is carried on in Boston is transitory in its nature and subsidiary in character. The offices of its treasurer and president might be in any town or city most convenient for the transaction of those of its purposes which are incidental to its chief function. The same is true of the meetings of the incorporators and trustees. But these attributes do not constitute its main function, which is the maintenance of the land designated in its charter for a cemetery, and which can be discharged only at the place known as Mount Auburn. It is conceivable that the executive or administrative offices of one city or town might be located within the territorial limits of another. But it hardly would be contended that thereby the municipality ceased to retain its domicil and residence within its old boundaries.

A corporation cannot change its residence at will. *Ex parte Schollenberger,* 96 U. S. 369, 377. Hence the act of the defendant in establishing a place other than Mount Auburn as the meeting place of its corporators and trustees, and for the care of its trust funds, has no effect upon its domicil. The place for the performance of these corporate activities, being wholly incidental to its fundamental purpose, may be fixed at any convenient place within the Commonwealth.

It often has been held respecting a business corporation that its residence is in the place where its manufacturing, mercantile or other chief activities are carried on, and not where only its corporate or directors' meetings are held or its records are kept. *Woodsum Steamboat Co.* v. *Sunapee,* 74 N. H. 495. *Kennett* v. *Woodworth-Mason Co.* 68 N. H. 432. *Connecticut & Passumpsic Rivers Railroad* v. *Cooper,* 30 Vt. 476. *Milwaukee Steamship Co.* v. *Milwaukee,* 83 Wis. 590. *Detroit Transportation Co.* v. *Assessors of Detroit,* 91 Mich. 382. The decisions in the many English cases where the question has been considered rest upon the well established principle that the residence of a trading or business corporation is to be determined by ascertaining where its "real trade and business is carried on," or (to use a phrase having both German and French juristic equivalent) where is "the central point of its business." *Cesena Sulphur Co.* v. *Nicholson,* 1 Ex. D. 428, 452.

*Jones* v. *Scottish Accident Ins. Co.* 17 Q. B. D. 421. *Keynsham Blue Lias Lime Co.* v. *Baker,* 2 H. & C. 729. It is unnecessary to determine whether, in the application of this principle, the English courts always are in harmony with decisions of the best courts in this country. See *De Beers Consolidated Mines* v. *Howe,* [1905] 2 K. B. 612, 635, 639. Even if that principle were applied to the defendant, it could not be said that its central business activities were not conducted at Mount Auburn.

It follows that in the opinion of a majority of the court the defendant was not subject to taxation as an inhabitant of Boston.

In accordance with the terms of the report the entry must be

*Judgment for the defendant.*