PROPRIETORS OF THE CEMETERY OF MOUNT AUBURN *vs.*
UNEMPLOYMENT COMPENSATION COMMISSION.

SAME *vs.* SAME.

Middlesex. October 2, 1939. — February 27, 1940.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & COX, JJ.

*Unemployment Compensation. Cemetery. Corporation,* Charitable. *Mount
Auburn Cemetery.*

A corporation whose dominant purpose and activity were the operation
of the Mount Auburn Cemetery was a private cemetery corporation
and not exempted from the operation of the unemployment compen-
sation law, G. L. (Ter. Ed.) c. 151A, as appearing in St. 1937, c. 421,
on the ground that it was "organized and operated exclusively for a
religious, charitable . . . or educational purpose . . . or for any com-
bination of such purposes" within § 1 (f), (7), although its land and
income from the sale of lots must be devoted solely to the cemetery
purposes and the purposes of an experimental garden maintained in
conjunction with the cemetery for the advancement of horticulture,
its proprietors were not entitled to derive profit from it, and there
was public interest in the cemetery as a bird sanctuary and in the
graves of famous persons buried therein.

TWO ACTIONS OF CONTRACT. Writs in the Superior Court
dated November 21, 1938.

The actions were heard by *O'Connell,* J.

*J. Noble,* for the plaintiff.

*E. O. Proctor,* Assistant Attorney General, for the de-
fendant.

DOLAN, J. These are two actions of contract to recover
money paid by the plaintiff to the defendant under protest,
as contributions to the unemployment compensation fund
under G. L. (Ter. Ed.) c. 151A, as it appears in St. 1935,
c. 479, § 5, and St. 1937, c. 421. A prior suit in equity
brought by the plaintiff to enjoin the commission from col-
lecting contributions from the plaintiff was dismissed by
this court without prejudice to its right "to pursue its ap-
propriate remedy under the statute." *Proprietors of the*

*Cemetery of Mount Auburn* v. *Unemployment Compensation Commission*, 301 Mass. 211, 214.

The present actions were brought after the plaintiff had made application for refunds under c. 151A, § 8, and the application had been denied. The cases come before us upon the report without decision of a judge of the Superior Court, who heard them upon a statement of agreed facts.

The material facts are in substance as follows: Under St. 1829, c. 22, the Massachusetts Horticultural Society was incorporated for the purpose of "encouraging and improving the science and practice of horticulture" with the right to purchase real estate to the amount of $10,000 and personal estate to the amount of $20,000. By St. 1831, c. 69, the society was authorized to dedicate and appropriate any part of the real estate then owned or thereafter to be acquired by it, "as and for a rural cemetery or burying ground, and for the erection of tombs, cenotaphs, or other monuments for, or in memory of the dead . . . to lay out the same in suitable lots . . . to plant and embellish the same with shrubbery, flowers, trees, walks, and other rural ornaments . . . and to make and annex thereto other suitable appendages and conveniences, as the society shall, from time to time, deem expedient." It was further provided that "whenever the society shall so lay out and appropriate any of . . . [its] real estate for a cemetery, or burying ground, as aforesaid, the same shall be deemed a perpetual dedication thereof for the purposes aforesaid; and the real estate so dedicated shall be forever held by the . . . society in trust for such purposes, and for none other."

A tract of land bordering on the Charles River and known as "Sweet Auburn" was purchased by the society. Dedication exercises were held upon the grounds on August 31, 1831, at which Mr. Justice Story "of the Supreme Court" delivered an address, extracts from which are included in the agreed facts. It was the purpose of the incorporators who conceived the idea of a rural cemetery in 1825 to combine with it a public memorial garden. "The operation of the Experimental Garden in conjunction with the cemetery having proved difficult, arrangements were made within

the Society for placing them under separate management."
These arrangements culminated with the passage of c. 96
of the Acts of 1835, creating the plaintiff corporation under
the name of the "Proprietors of the Cemetery of Mount
Auburn." Under the terms of the statute the powers and
privileges conferred upon the society by St. 1831, c. 69, were
conferred upon the plaintiff. It was authorized to take and
hold the garden and cemetery "and any other lands adja-
cent thereto, not exceeding fifty acres . . . upon the same
trusts, and for the same purposes" as the society then held
the same, and to take and hold any personal estate not ex-
ceeding in value $50,000. It was also provided that as soon
as the plaintiff should have received a conveyance of the
"garden and cemetery" the society should cease to have
any rights, powers and authorities over the same. Author-
ity was also granted to take and hold any grant, donation
or bequest of property upon trust to apply the income
thereof for the improvement or embellishment of the ceme-
tery "or of the garden adjacent thereto, or of any buildings,
structures or fences, erected or to be erected upon the lands
of the . . . [plaintiff], or of any individual proprietor of a
lot in the cemetery . . . or for the planting and cultivation
of trees, shrubs, flowers or plants, in or around any ceme-
tery lot, according to the terms of such grant, donation or be-
quest . . . ." It was also provided that sales of cemetery
lots should be made at a price not less than the sum of $60
for every lot containing three hundred square feet, and so in
proportion for any greater or less quantity, "unless the said
horticultural society, and the . . . [plaintiff] shall mutually
agree to sell the same at a less price." The proceeds of the
first sales of lots, after deducting the annual expenses of the
cemetery establishment, were provided to be applied to
the extinguishment of the debts then due by the society on
account of the "garden and cemetery," and after "the ex-
tinguishment of the said debts, the balance of the said pro-
ceeds, and the proceeds of all future sales," were provided
to be divided "on the first Monday in every year," as fol-
lows: "fourteen hundred dollars shall be first deducted
from the gross proceeds of the sales of lots, during the pre-

ceding year, for the purpose of defraying the superintend-
ent's salary and other incidental expenses of the cemetery
establishment, and the residue of the said gross proceeds
shall be divided between the said horticultural society and
the corporation created by this act, as follows, namely:
one fourth part thereof shall be received by and paid over
to the said horticultural society, on the first Monday of
January, of every year, and the remaining three fourth parts
shall be retained and held by the corporation created by this
act, to their own use forever.  And if the sales of any year
shall be less than fourteen hundred dollars, then the de-
ficiency shall be a charge on the sales of the succeeding year
or years.  Fourthly, the money so received by the said
horticultural society shall be forever devoted and applied
by the said society, to the purposes of an experimental
garden, and to promote the art and science of horticulture,
and for no other purpose.  And the money so retained by the
corporation created by this act, shall be forever devoted and
applied to the preservation, improvement, embellishment
and enlargement of the said cemetery . . . . Fifthly, a com-
mittee of the said horticultural society, duly appointed for
this purpose, shall, on the first Monday of January, of every
year, have a right to inspect and examine the books and
accounts of the treasurer, or other officer acting as treasurer
of the corporation created by this act, as far as may be
necessary to ascertain the sales of lots of the preceding
year."  The final section of the act reads as follows: "*Be
it further enacted*, That the said cemetery shall be, and
hereby is declared exempted from all public taxes, so long
as the same shall remain dedicated to the purposes of a
cemetery."

The lands of the plaintiff have been embellished by the
planting of rare and ornamental trees, flowering shrubs and
plants.  Driveways and paths have been laid out, marshes
have been made into attractive ponds.  A program of plant-
ing arranged by the Audubon Society has made the "place"
a bird sanctuary.  Members of natural history societies
visit the grounds to study migratory birds.  Monuments
have been erected upon the grounds "to commemorate

famous persons and important events in the history of the State and Nation." The remains of many notable persons are interred in the cemetery. Their graves are of interest to many, and "The public are freely admitted to the grounds. The number of visitors exceeds 75,000 annually . . . not counting relatives of persons buried in the cemetery, and persons who live in the neighborhood."

The plaintiff "employs, on an average, about one hundred persons whose work is performed exclusively in the upkeep, maintenance and operation of the cemetery, — care of grounds, trees, planting, paths and drives. It employs no one for any other purpose or in any other work."

Under the provisions of c. 151A, § 1 (f), (7), as it appears in St. 1937, c. 421, there is excepted from its operations "Service performed in the employ of a corporation . . . organized and operated exclusively for a religious, charitable, . . . literary or educational purpose . . . or for any combination of such purposes, no part of the net earnings of which enures to the benefit of any private shareholder or individual." So far as pertinent the provisions of this section are phrased in substantially the same language as that used in the social security act of 1935 which, like our own statute, contains no provision exempting cemetery corporations from its operations. See U. S. C., Sup. IV, Title 42, § 410 (b), (7). (Compare the Federal revenue act of 1936 whereunder not only is there provided an exemption such as that contained in our c. 151A, § 1 [f], [7], but also an exemption of "Cemetery companies owned and operated exclusively for the benefit of their members or which are not operated for profit . . . ." U. S. C., Sup. IV, Title 26, § 103 [5], [6]. See now I. R. C. § 101, [5], [6].) See *Howes Brothers Co.* v. *Unemployment Compensation Commission*, 296 Mass. 275.

The plaintiff claims exemption from the operation of c. 151A under the exemptions contained in § 1 (f), (7), asserting that it was organized and is operated exclusively for religious, charitable and educational purposes. This is the sole ground upon which the plaintiff rests its claim to exemption. It does not contend that all cemetery corpora-

tions as such are exempt from the operations of c. 151A, or that all cemeteries are "public charities." It concedes that "Most, if not all, other cemetery corporations organized under the general cemetery law or special acts are not public charities," because "a cemetery corporation which can sell its lands and divide the proceeds among its proprietors at any time is a private enterprise."

Ordinarily a cemetery is not a public charity. *Donnelly v. Boston Catholic Cemetery Association,* 146 Mass. 163. *Milford v. County Commissioners,* 213 Mass. 162. *Bullock v. Commissioner of Corporations & Taxation,* 260 Mass. 129. Under G. L. (Ter. Ed.) c. 59, § 5, exempting certain property from taxation, the twelfth clause exempts from taxation "Cemeteries, tombs and rights of burial, so long as dedicated to the burial of the dead." Thus by general law the same exemption from taxation is granted to all cemeteries that was granted to the plaintiff by the act under which it was incorporated "so long as the . . . [cemetery] shall remain dedicated to the purposes of a cemetery." It is also to be observed that the provision for the exemption of cemeteries from taxation under G. L. (Ter. Ed.) c. 59, § 5, Twelfth, is separately dealt with, provision for the exemption of charitable institutions being provided for in § 5, Third, (a), (b).

Stress has been laid by the plaintiff upon the fact that, under the act by which it was incorporated, it may never sell its land for other purposes than those for which it was incorporated; that none of its proprietors has any rights in the land except the right of burial and has no interest in the earnings or profits of the plaintiff; and that the share of the proceeds of sale of lots which is retained by it must be held in trust for the preservation, improvement, embellishment and enlargement of the cemetery "and garden" and for no other purpose. The plaintiff also relies upon the provisions of the act of incorporation wherein there is frequent reference to the "cemetery and garden," urging that, by virtue of the monuments therein erected, the bird sanctuary established there, and the great interest of the public generally in these things as well as in the graves of so many

famous men, the purposes for which the plaintiff was incorporated and which have been carried out are educational and charitable in their character.

The history and character of the plaintiff corporation have been considered in prior decisions of this court, in none of which is there any discussion of the "garden" as distinguished from the cemetery itself.   In *Mount Auburn Cemetery* v. *Mayor & Aldermen of Cambridge*, 150 Mass. 12, at page 16, in speaking of the cemetery the court said: "The land in question is perpetually devoted by law to the burial of the dead, and it cannot be sold or appropriated to any other use until the law shall be changed." In *Collector of Taxes of Boston* v. *Mount Auburn Cemetery*, 217 Mass. 286, at page 289, the court said: ". . . the defendant is not a business corporation in any commercial sense.   Its land is devoted perpetually by its charter to the burial of the dead. Thousands of people, in reliance upon this legislative declaration and pledge have performed the sacred rites of interment of kindred and friends in this plot of ground.   The defendant is prohibited by law from making any profit out of the sale of lots in its cemetery, but must forever expend its resources derived through this channel in the adornment and beautifying and improvement of its cemetery . . . . It never can dispose of the land described in its charter nor divide its assets in whole or in part among its corporators. Nor can it sell its land even for the purpose of removal to another location.   It is distinguished in some respects from the ordinary cemetery corporation of which types may be found in *Donnelly* v. *Boston Catholic Cemetery Association*, 146 Mass. 163, and *Milford* v. *County Commissioners*, 213 Mass. 162.   Its single function is to furnish a burial place for the dead at this particular place known as Mount Auburn . . . . The dominant purpose and single chief activity of this corporation as determined by its charter is to maintain a cemetery at Mount Auburn.   Statutes enacted subsequent to its original incorporation emphasize the connection of the defendant with the cemetery at Mount Auburn.   St. 1850, c. 271, enlarges its powers to purchase land for its corporate uses in Cambridge and Watertown.

St. 1859, c. 197, refers to the 'cemetery.' . . . All the other corporate powers are conferred as ancillary to this main object, and have no reason for existence except in furtherance of the cemetery."

We are of opinion that it must be taken to be established that the "dominant purpose and single chief activity," and "single function" of the plaintiff is to furnish a burial place for the dead in the particular location which has been dedicated to that purpose, that it is a cemetery corporation and that the provisions of its charter which make reference to the garden in conjunction with the cemetery must be held to speak of the garden merely as an incident to the embellishment of the cemetery itself and not as a separate and distinct undertaking of an educational or charitable character. Its proprietors or lot owners constitute a definite class of persons. It is not a religious society even though religious rites may accompany the burial of dead in the cemetery. See *Bullock* v. *Commissioner of Corporations & Taxation,* 260 Mass. 129, 132, 133. Compare *Assessors of Boston* v. *Garland School of Home Making,* 296 Mass. 378, 388–389. The plaintiff is not a charity unless marked out by some features which distinguish it from other cemetery corporations and serve to make it a charitable corporation. We are of opinion that the facts that none of the plaintiff's proprietors can derive a profit from its conduct, and that it cannot use its land for any other purpose or sell it without legislative authority, do not make it a charity. It is the uses and purposes for which the plaintiff was organized, and not its permanence, that govern its character.

By St. 1851, c. 292, the Catholic Cemetery Association in Dorchester was incorporated "for the purpose of establishing and perpetuating a place for the burial of the dead, to be located in the town of Dorchester" with the powers and privileges and subject to the duties, liabilities and restrictions provided in the then existing laws governing cemetery corporations (St. 1841, c. 114; Rev. Sts. c. 44). In the case involving this corporation (*Donnelly* v. *Boston Catholic Cemetery Association,* 146 Mass. 163, at page 164) it appeared that the corporation "had no capital stock, issued

no certificates of shares, and paid no dividends or any
profits; that no member of the corporation, by virtue of
his membership, received any pecuniary benefit whatever
from the association; that all of the money received by
the corporation, whether from the sale of graves or other-
wise, was exclusively used for ornamenting the grounds,
burying the poor, giving graves to public institutions, and
carrying out the purposes for which the corporation was
formed; that when persons died without leaving sufficient
funds for burial, the corporation gave graves, and furnished
the coffin and hearse . . . and that this had been the char-
acter and course of the association from its organization."
At pages 166–167, the court said: "There is no pretence
that the defendant is acting as an agent for the city. We
think that there is equally little ground for calling it a chari-
table corporation. Assuming for the sake of argument that
it would have no right to declare dividends to its members in
case of realizing profits, there is nothing in the charter which
compels the application of any part of its funds to charitable
uses. It would be acting strictly within its powers if it
sold all its lands for full price. . . . The fact that the funds
received were actually applied to a considerable extent in
charity, is no more material than evidence of a similar ap-
plication of a part of his income by a private citizen would
be, in a suit against him" (for the negligence of his servants
or agents).

The question remains whether by virtue of the fact that
the plaintiff is required by its charter to pay to the society
annually one fourth of the proceeds from the sale of lots,
after deducting certain expenses, to be "forever devoted and
applied by the said society, to the purposes of an experi-
mental garden, and to promote the art and science of horti-
culture, and for no other purpose," serves to take the plain-
tiff out of the classification of a cemetery corporation, and
to constitute it a charitable corporation. We think it does
not. Even if it be assumed without deciding that this re-
quirement constitutes one for the devotion by the plaintiff
itself of part of its profits to a charitable purpose, yet this
would not bring it within the exemption in § 1 (f), (7) of

c. 151A of corporations organized and operated "exclusively" for a religious, charitable, literary or educational purpose or for a combination of such purposes. "The dominant purpose and single chief activity of . . . [the plaintiff] as determined by its charter is to maintain a cemetery at Mount Auburn." *Collector of Taxes of Boston* v. *Mount Auburn Cemetery,* 217 Mass. 286, 289. See also *Mount Hope Cemetery* v. *Boston,* 158 Mass. 509.

We conclude that the plaintiff is a private cemetery corporation and that it is not a corporation "organized and operated exclusively for a religious, charitable . . . literary or educational purpose . . . or for a combination of such purposes . . ." and accordingly is not exempt from the operation of the provisions of c. 151A.

*Judgment for the defendant in each case.*