# Comer *v.* Lehman, Durr & Co.

*Bill in Equity, for Reformation and Foreclosure of Mortgage.*

1.    *Mortgage of personalty; indefinite description; reformation in equity.*—A mortgage conveying "twenty head of mules and horses now in use upon my said plantation," without other descriptive or identifying words, is void for uncertainty and indefiniteness, when it is shown that the mortgagor in fact had nearly twice that number on the plantation at that time ; and a court of equity will not reform it, on averment and proof that he proposed to mortgage all of his horses and mules, and represented that they were twenty in number.

2.    *Mortgage of crops, "to extent of one hundred bales of cotton."*—A mortgage conveying "the entire crop of corn, cotton, fodder, cotton seed, and all other crops of every kind or description, which may be made and grown during the present year on said lands, to *the extent of one hundred bales of cotton, which is to be the first cotton picked,"* and de-

[Comer v. Lehman, Durr & Co.]

claring the mortgagor *"may mortgage to other parties any balance after such one hundred bales;"* the italicized words being written, and the others part of a printed form, conveys not only one hundred bales of cotton, but the other crops also as security for the delivery of the one hundred bales, or their value. (McCLELLAN, J. *dissenting*, held that it conveyed only the one hundred bales of cotton.)

3. *Foreclos :re of mortgage; extent of relief as to matters cognizable at law; interest.*—Under a bill to foreclose a mortgage on crops, a purchaser with notice being joined as a defendant, he may be held responsible, not only for the cotton then in his possession, but also for cotton received and sold by him before the bill was filed, although the mortgagee might maintain an action at law for its conversion; and he is chargeable with interest on the value of the cotton so sold, although, by agreement of the parties to the cause, he has been allowed to sell the cotton in possession, giving a bond to account for its value.

APPEAL from the Chancery Court of Bullock.

Heard before the Hon. JOHN A. FOSTER.

The original bill in this case was filed by Lehman, Durr & Co., commission-merchants in Montgomery, against J. F. Comer and H. M. Comer & Co., a partnership doing business in Savannah, Georgia; and sought principally to enforce and foreclose a mortgage on crops, horses, mules, &c., executed to plaintiffs by said J. F. Comer; also, the appointment of a receiver to take possession of the mortgaged property, and to hold H. M. Comer & Co. accountable for some of the mortgaged property which was in their possession, and for the value of some of the cotton which they had received and sold, having knowledge, as alleged, of the mortgage to the complainants. The mortgage was dated May 12th, 1886, and recited an indebtedness of $7,000 for money loaned and advanced. It was a printed form, with blanks filled up and additions made in writing. The material parts are quoted in the opinion of the court. A copy of this mortgage, partly printed and partly written, like the original, was made an exhibit to the bill, and was sent to this court for inspection. The mortgage was duly recorded in Bullock and Barbour counties, in which the plantations of the mortgagor were situated.

An answer to the bill was filed by J. F. Comer, in which, admitting the execution of the mortgage, he insisted that it only conveyed to complainants one hundred bales of cotton, the first to be picked and ginned, and that the mortgage was void as to the mules and horses for uncertainty, because he then had on his plantations about thirty-six mules and horses; and he alleged that, on November 30th, 1886, being indebted to H. M. Comer & Co. in the sum of about $15,000, he had conveyed to them, in absolute payment of said in-

[Comer v. Lehman, Durr & Co.]

debtedness, his plantations, all of his horses and mules, and about fourteen bales of cotton, the last of his crop, after more than one hundred bales had been picked and ginned. An answer was also filed by H. M. Comer & Co., substantially the same as the answer of J. F. Comer, denying that they had any knowledge, information or notice, until after November 30th, 1886, that complainants had or claimed any mortgage or lien whatever upon the crops of J. F. Comer, except upon the first one hundred bales of cotton. The complainants then filed an amended bill, alleging that J. F. Comer, when he made application for a loan of money, and pending the negotiations for the same, proposed to mortgage all of the horses and mules he had which were unincumbered, representing that he had about twenty, and that he could not give any particular description of them; that the complainants, trusting to these representations, so expressed the number in the mortgage; and praying that the mortgage be reformed, so as to express and include the true number. The amended bill alleged, also, that prior to November 30th, 1886, H. M. Comer & Co. had received from J. F. Comer, of the crops covered by the complainants' mortgage, about seventy-five bales of cotton, some of which they had sold, and still had possession of the remainder; and prayed that they might be held accountable for this cotton, or its proceeds. In their answer to the amended bill, H. M. Comer & Co. admitted that they had received the cotton as alleged, but said that they had sold it, and had accounted to J. F. Comer for the proceeds of sale, before the bill was filed, and before they had any notice or information that complainants asserted any claim to it; and they demurred to the amended bill, so far as it sought relief as to this cotton, on the ground that complainants had an adequate remedy at law.

On the filing of the bill, an application being made to the register for the appointment of a receiver, it was thereupon agreed between the parties, "in order to save costs and expenses, that H. M. Comer & Co. should retain the possession of all of said property, upon their entering into bond conditioned that, if, on the final decision of said cause, it is ascertained and decided that Lehman, Durr & Co. are entitled to any part of the said property, under and by virtue of the mortgage which they claim to hold on the same; and if thereupon H. M. Comer & Co. shall pay, or cause to be paid to the said Lehman, Durr & Co., any decree which may be rendered against them, for the value of any of said property

embraced or covered by said mortgage, then said obligation to be void;" and a bond was executed by H. M. Comer & Co., conditioned as stipulated. It was agreed, also, that the chancellor should consider the question of allowing interest, as against H. M. Comer & Co., on the cotton received and sold by them before the bill was filed, the interest amounting to $462.

The chancellor held the mortgage void as to the horses and mules, and refused to reform it; but he further held that it conveyed, not only one hundred bales of cotton, but also all the other crops, corn, cotton-seed, fodder, &c., and that the complainants were entitled to hold H. M. Comer & Co. liable in this suit for the proceeds of all the cotton which they had received and sold before the bill was filed; and he ordered a reference to the register, to ascertain the indebtedness of J. F. Comer to the complainants, and the amount for which H. M. Comer & Co. were responsible. The register reported the indebtedness of J. F. Comer, principal and interest, to be $6,120.80, and that of H. M. Comer & Co. to be $4,991. The report was confirmed, and a personal decree was then rendered against the defendants separately, with a direction that all sums paid by H. M. Comer & Co., or collected from them, should be credited on the decree against said J. F. Comer ; but the chancellor refused to allow interest against H. M. Comer & Co. on the proceeds of the cotton which they had received and sold before the bill was filed.

The defendants appeal from this decree, and here assign it as error, particularly in the construction given to the mortgage on the crops. By consent, the complainants below file cross-assignments of error: 1st, the refusal to reform the mortgage as to the horses and mules; 2d, the refusal to allow interest against H. M. Comer & Co., as claimed.

G. L. Comer, for appellants.—(1.) The mortgage being a printed form, with written changes and additions, the written words must control in the construction of the instrument; and they limit the conveyance to one hundred bales of cotton, the first to be picked and ginned.—*Bolman v. Lohman*, 79 Ala. 67. (2.) As to the mules and horses, the mortgage was void for uncertainty, and the chancellor properly refused to reform it.—Jones on Chattel Mortgages, § 55, and authorities cited; *Stewart v. Jaques*, 77 Geo. 365; *Richardson v. Lumber Co.*, 40 Mich. 203; *Blakely v. Patrick*, 67 N. C.

[Comer v. Lehman, Durr & Co.]

40; 1 Kans. 259; *Mobile Savings Bank v. Fry*, 69 Ala. 348; *Hurt v. Redd*, 64 Ala. 85.   (3.)  As to the cotton received and sold by H. M. Comer & Co. before the bill was filed, if it was a part of the one hundred bales first picked and ginned, complainants had an adequate remedy at law, by action of trover, or special action on the case.   (4.) Complainants received the highest market price for the cotton which went into the hands of H. M. Comer & Co., and they were not entitled to interest on it also.

TROY, TOMPKINS & LONDON, *contra*.—(1) As to the mortgage on the mules and horses, the complainants were entitled to have it reformed and foreclosed on all the animals, or, at least, to be allowed to select twenty of the number.  The proof is undisputed, that Comer proposed to mortgage all of his horses and mules, and that complainants accepted his proposal as made, trusting to his representations as to the number.  To refuse relief as to the horses and mules under these circumstances, would be to allow a party to take advantage of his own fraud or wrongful act.—*Love v. Graham*, 25 Ala. 187; *Smith v. Jordan*, 97 Amer. Dec. 232; 55 *Ib.* 137; 1 Story's Equity, §§ 147, 154; 2 Pom. Equity, §§ 870, 872; 3 *Ib.* § 1376; *Call v. Gray*, 75 Amer. Dec. 141.  (2.)  As to the cotton and other crops, the chancellor adopted the proper and most reasonable construction.  When a written instrument is fairly susceptible of two or more constructions, it will be construed most strongly against the grantor; and though it be partly printed, and partly written, effect must be given to every word, if possible, since it is not to be presumed that the parties intended to insert inconsistent provisions.—1 Brick. Digest, 386, § 162; *Wilson v. Manning*, 53 Ala. 549; *Robinson v. Bullock*, 58 Ala. 618; *Ins. Co. v. Crane*, 77 Amer. Dec. 289; *Hutchinson v. Lord*, *Ib.* 381, 388; 1 Chitty on Contracts, 120; *Bolman v. Lohman*, 79 Ala. 67.   (3.)  H. M. Comer & Co. are chargeable as purchasers with notice, actual and constructive.—Jones on Chattel Mortgages, § 312; *Price v. McDonald*, 54 Amer. Dec. 657; *Morrison v. Kelly*, 74 Amer. Dec. 178; 15 Wall. 165-75; Wade on Notice, §§ 17, 90, 183; *Westmoreland v. Foster*, 60 Ala. 455; 2 Story's Equity, §§ 1255-6.  As to the right to hold them responsible in this suit for the proceeds of cotton sold before the bill was filed, see *Stow v. Bozeman*, 29 Ala. 397; *Scruggs v. Driver*, 31 Ala. 274; *Alexander v. Rea*, 50 Ala. 450.   (4.)  But the chancellor

[Comer v. Lehman, Durr & Co.]

erred in not allowing the complainants interest on the proceeds of this cotton, which was not included in the terms of the bond given by H. M. Comer & Co.—*Flinn v. Barber*, 64 Ala. 193; *State v. Lott*, 69 Ala. 147; *Bradley v. Harden*, 73 Ala. 70; *Chambers v. Wright*, 52 Ala. 444; *Broughton v. Mitchell*, 64 Ala. 210..

McCLELLAN, J.—The negotiations of the parties, which led up to and resulted in the execution of the mortgage, may, on the case as presented by the complainants, be epitomized thus: Comer desired to borrow seven thousand dollars from Lehman, Durr & Co. The latter required that the loan be secured by mortgage. Comer proposed to secure them by assigning certain *choses* in action, and by mortgage on certain crops, and on all his mules and horses then in use on his plantations in Barbour and Bullock counties, and represented that there were twenty head of such mules and horses, though he in fact had thirty-six horses and mules on said plantations at the time, as afterwards transpired. This proposition was accepted, the mortgage drawn accordingly, and the money advanced. The contract thus reduced to writing was the contract upon which the minds of the parties had met. The agreement was for twenty head of mules and horses—the contract was so written. The intention of the parties was to cover that number, and that intention was embodied in the paper. Had complainants known the real facts, they might have declined to advance the money, unless Comer would put thirty-six instead of twenty mules and horses in the mortgage; and Comer might or might not have done so. The intentions of the parties might have been other than they were, had all the facts been known to the complainants; on the facts as represented, the intention was clear, and is clearly expressed in the instrument. Equity will reform written contracts, so as to make them evidence what they were intended to evidence—the pact between the parties; but it will not amend a contract entered into under a misapprehension of facts by one party or both, so as to make of it an agreement which the parties, or either of them, did not contemplate, and which the parties, or one of them, might have declined to execute, had both been cognizant of all the facts. This would be, not to make the writing speak the true terms of the agreement—the real intent of the parties—but to make a new contract embodying terms on which the minds of the parties not only had not met, but with respect to which, in

this case, according to the aspect of the evidence most favorable to the complainants, one of the parties had resorted to misrepresentation to avoid. This may have been fraud; it may have afforded ground for equitable relief against the contract made; but it is not ground for making a new contract between the parties. We discover no error in the decree of the chancellor on this part of the case.

The granting part of the mortgage, or so much of it as is material for us to consider, is in the following words: "*I, the said J. F. Comer*, do by these presents grant, bargain, sell and convey, to the said Lehman, Durr & Co., the following real and personal property, to-wit, the entire crops of corn, cotton, fodder, cotton-seed, and all other crops of every kind or description, which may be made and grown during the present year on the lands in *Bullock and Barbour* county, which *I am* cultivating and causing to be cultivated during the present year, *to the extent of one hundred bales of cotton, which said cotton is to be the first cotton picked and raised on any of my plantations; said cotton is to weigh five hundred pounds average to the bale; any balance after such 100 bales cotton he may mortgage to other parties.*" In making this mortgage, a printed form was used, and the instrument as executed was partly printed and partly written. Of the clause quoted above, that part which is italicized is written, and the other is printed. The instrument also undertook to convey twenty mules and horses, and to transfer and assign certain *choses* in action, amounting to ten thousand dollars, to secure a loan of seven thousand dollars. The chancellor construed that part of the granting clause of the mortgage which is quoted above to embrace and convey one hundred bales of cotton, and all of the other crops grown on the plantations referred to. My own opinion is, that it covers only the one hundred bales of cotton. I base this conclusion on the following considerations: (1.) The words, "entire crops of corn, cotton, cotton-seed," &c., appear in the printed form. They are inconsistent with the written limitations, which, to my mind, refer to the substantive term, "entire crops," and confine the operation of the instrument to one hundred bales of cotton out of the crop. The use of the words, "of corn, cotton-seed," &c., is due to the fact that they were a part of the printed paper intended for general application, and is not referable to the intention of the parties to this particular transaction. In such cases, the rule is to discard the irreconcilable printed words, and look alone to

[Comer v. Lehman, Durr & Co.]

those that are written, as being the best exponents of intention.—*Amer. Ex. Co. v. Binckney*, 29 Ill. 410; *Robertson v. French*, 4 East, 130. (2.) The property which this interpretation leaves nominally subject to the mortgage, was amply sufficient to secure the money advanced; and it is not to be assumed, as showing intention, that the mortgagees would have demanded, or the mortgagor would have consented to give, more security than was necessary, especially when the paper itself evidences that it was contemplated by both parties that Comer would have to execute other mortgages to secure additional advances. (3.) The correspondence of the parties between the execution and the law-day of the mortgage tends strongly to show that each and all of them treated and construed it as covering no part of the crops except the one hundred bales of cotton.

But a majority of the court have reached a different conclusion. They take a middle ground between my position and that of the chancellor, and hold that the instrument is an absolute mortgage, so to speak, on one hundred bales of cotton, and that it covers also the other crops, but only for the purpose of securing the delivery of one hundred bales of cotton, or the payment of the value thereof, and only to the extent necessary to an effectuation of that purpose. This conclusion has been reached mainly on the consideration, that no other construction will admit of some meaning being given to each of the words employed. Under this construction, the chancellor will so shape his further action in the premises as to subject the other crops, or the proceeds arising from a sale of them, to the end that the complainants shall receive the full value of the one hundred bales of cotton, of the quality indicated in the mortgage.

The Chancery Court having taken jurisdiction to foreclose the mortgage on the crops which were in the possession of H. M. Comer & Co. in Alabama, at the time the bill was filed, properly took cognizance of complainants' claim against said H. M. Comer & Co., on account of cotton covered by the mortgage, which had been received and disposed of by them before the suit was instituted.

This cotton, it appears, was not embraced in the forthcoming bond which Comer & Co. executed, and the consideration which rendered it inequitable to decree interest on the value of the property covered by that bond did not apply to the proceeds of the cotton. The decree should have allowed complainants interest on the value of the cotton which had

24

been disposed of by Comer & Co. before bill filed, from the time of its sale by them.

For the errors above indicated, the decree is reversed, and the cause is remanded.