Sullivan,  }
April 7, 1908. }

## WOODSUM STEAMBOAT CO. v. SUNAPEE.

The residence of a voluntary corporation, so far as it has one, is the town or
  city where its business is in fact principally transacted, and not the place
  where the clerk's records are kept and stockholders' meetings are held, nor
  the locality described as its place of business in the articles of agreement.

PETITION, for the abatement of taxes assessed upon the plain-
tiff's steamboats in 1907. Transferred without ruling from the
November term, 1907, of the superior court by *Chamberlin*, J.,
upon an agreed statement of facts.

The plaintiff is a corporation, organized under the General
Laws in 1886. The articles of agreement, recorded in the office
of the secretary of state and of the city clerk of Concord, provide
as follows:

" 2. The place in which its business shall be carried on shall be
Concord, New Hampshire.

" 3. The object for which this corporation is established is for
the purpose of building a steam vessel or vessels, equipping the
same, and performing everything necessary for the navigation of
the waters of Sunapee lake, in New Hampshire, for the purpose of
carrying and transporting passengers, express, freight, and mail
matter on said lake."

The corporation owns and operates boats, valued at over $100,
on Sunapee lake. The lake is situated in Sunapee, Newbury, and
New London, and the plaintiff owns real estate in each of those
towns. About one half the plaintiff's business is done in Sunapee,
and the rest in Newbury and New London. Its boats start from
Sunapee in the morning and return at night. When not in use
they are kept in Sunapee, summer and winter, except that one
small boat is usually kept in Newbury during the winter. The
general manager, clerk, and treasurer of the corporation reside and
have their offices in Concord. The annual meeting of the corpo-
ration is held in that city, and the books and records of the corpo-
ration are kept there.

In 1907, the plaintiff was advised that its boats were taxable in
Concord, and thereupon returned them for taxation and was taxed
for them in that city. The defendants also taxed the boats to the
plaintiff, and upon a refusal of the selectmen to abate the tax this
appeal was taken.

*Mitchell, Foster & Lake* and *Edmund S. Cook*, for the plaintiff.

*Frank O. Chellis* and *Martin & Howe*, for the defendants.

PEASLEE, J.    It has been decided in this state that corporations are not persons within the meaning of the statute for taxing polls and estates (R. S., *c.* 40, *s.* 1; P. S., *c.* 56, *s.* 1), but that their taxable estate is assessed by virtue of the act providing for its taxation where the corporation is situate (R. S., *c.* 40, *s.* 5) or is located (P. S., *c.* 56, *s.* 9). *Nashua Savings Bank* v. *Nashua*, 46 N. H. 389, 392. But whether the *situs* of a corporation is called its residence, or situation, or location, the result in the present case will be the same.

The plaintiff's property is taxable either under the law pertaining to vessels (P. S., *c.* 56, *s.* 12), or that as to boats and launches. Laws 1905, *c.* 25, *s.* 1. In either event it is to be taxed at the place of residence of the owner, if in the state; otherwise at the home port, or at the place where the property was on April 1. This property was at its home port in Sunapee on that date, and so was rightly taxed there if the corporation resided in that town, or if it had no residence in the state.

The plaintiff's claim is that it had a residence apart and distinct from the place where its business was executed, and that its property of this class should be taxed to it at such residence. This contention cannot be sustained. A voluntary corporation's residence (so far as it has one) is the town or city where its business is principally executed. A town where it merely maintains an office and holds meetings of stockholders cannot be its residence within the meaning of the statute. *Kennett* v. *Company*, 68 N. H. 432.

The original voluntary corporation law of this state provided that the articles of agreement should state "the place within which its business is to be carried on," and that "it shall not do business in any other places than those mentioned in said articles." Laws 1866, *c.* 4224, *s.* 2. The articles were to be recorded in the "town in which the business is to be carried on." *Ib.*, *s.* 1. Copies of all by-laws were to be filed in the office of the clerk of "each city or town where they transact their business." *Ib.*, *s.* 5. A statement of its condition upon organization was to be filed with the clerk of the "town in which the association proposes to do business"; and a similar annual statement was to be "filed and recorded in the clerk's office of each town or city in which the association does business." *Ib.*, *s.* 7.

The commissioners of 1867 provided that the articles should state "the place in which its business is to be carried on" (Comm'rs' Rep. G. S., *c.* 139, *s.* 2), and should be "recorded in the office of the clerk of the town in which the principal business is

to be carried on." *Ib., s.* 1. The prohibition against doing business elsewhere was omitted. Changes of capital stock were to be recorded in "the town where its principal business is carried on" (*Ib., s.* 4), statements of condition upon organization in "the town in which the corporation proposes principally to do business" (*Ib., s.* 5), and annual returns in "the town in which the corporation principally does business." *Ib., s.* 5. Taking these sections together, it is evident that the phrase "the place in which its business is to be carried on" means the place where the principal business of the corporation is executed. There is no evidence of any legislative intent to change the meaning then applied to the language which is still used in this statute. P. S., *c.* 147, *s.* 2; *Ib., c.* 150, *ss.* 8, 10, 14, 16.

There is other equally conclusive evidence that the words "the place where business is carried on" do not mean the place where a clerk's records are kept and stockholders' meetings are held. The clerk of every corporation must reside and keep his office in the state (P. S., *c.* 148, *s.* 10), and all stockholders' meetings must be held in the state. 1 Thomp. Corp., *ss.* 694, 696. If a town became the place of business of a corporation by reason of keeping a clerk's office and holding stockholders' meetings therein, there could be no such thing as a New Hampshire corporation which had no place of business within the state. But the statutes provide that if any dividend-paying corporation "has no place of business in this state, all certificates and other papers required by law to be filed or recorded in the town clerk's office shall be so filed or recorded in the office of the secretary of state." P. S., *c.* 150, *s.* 15. This provision applies to corporations that merely maintain a corporate organization here, but execute their business outside the state. They have no place of business in the state. "If nothing was done except to hold stockholders' meetings and make records of their proceedings, the corporation would not carry on the business for which it was formed." *Kennett* v. *Company,* 68 N. H. 432.

In 1895, and again in 1897, the town in which records are to be made is referred to by the legislature as "the town which is its principal place of business." Laws 1895, *c.* 1, *s.* 2; Laws 1897, *c.* 49, *s.* 1. The last act was passed after the court had held in terms that the clerk's office and place where stockholders meet could not be deemed the place of business of the corporation, when its business was executed elsewhere. *Kennett* v. *Company, supra.*

The fundamental error in the plaintiff's argument is the assumption that its place of business was fixed by the declaration in the

articles of agreement, without regard to the facts as to where it was to do business. The statute demands a truthful statement of the fact. It requires the incorporators to disclose the actual *situs* of their proposed business. This duty is not performed by stating an imaginary *situs*. The location of the business is not changed by such an act. It is very likely true that the corporation would not thereafter be heard to deny that its *situs* was as it had stated, especially if others had acted upon the statement in good faith (*Galveston R. R.* v. *Cowdrey*, 11 Wall. 459), but this would be far from saying that its representation was binding upon those who were in no way parties to it. *Detroit Transportation Co.* v. *Assessors*, 91 Mich. 382. The authorities relied upon by the plaintiff (*Union Steamboat Co.* v. *Buffalo*, 82 N. Y. 351; *Pelton* v. *Company*, 37 Ohio St. 450) may to a large degree be distinguished from the present case by differences in the statutes. In so far as they hold that a corporation can locate a fictitious place of business and thereby conclude other parties, they run counter not only to the decided law of this state, but also to that of other jurisdictions. *Detroit Transportation Co.* v. *Assessors*, 91 Mich. 382; *Milwaukee Steamship Co.* v. *Milwaukee*, 83 Wis. 590.

It is not necessary to now decide whether a corporation doing a substantial part of its business in each of several towns may select any one of the towns as its *situs*. If under the statute there are difficulties which beset incorporators in the matter of rightly selecting the location of the corporation from the towns of the designated class (*i. e.*, those where it is to do business), the difficulty cannot be legally solved by declaring its *situs* to be a town wholly outside the class prescribed by the statute.

Upon the facts agreed to in this case, the principal place of business of this corporation was in Sunapee. If it might have chosen to be a "resident" of either Newbury or New London, it did not do so. If these facts do not make it a resident of Sunapee, then it has no residence. In any permissible view of the case, the property was rightly taxed in Sunapee.

*Petition dismissed.*

All concurred.