WEST SPRINGFIELD TRUST COMPANY *vs.* HARRY P. HINCKLEY & others.

Hampden. October 20, 1926. — January 5, 1927.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Mortgage*, Of personal property: identity of chattels, future acquired property, growing crops.

A chattel mortgage made in August, 1920, of "All the tobacco now harvested and placed in [certain] tobacco sheds . . . in the town of Agawam, Massachusetts, or that may be placed therein from this year's cutting," contained a covenant of ownership of and a right to sell the property mortgaged and a provision that the goods were not without the consent of the mortgagee to be removed from "said locations," referring to the sheds in Agawam. *Held*, that the covenant referred to the 1920 growing crop of the mortgagor which had been or thereafter would be placed in the designated sheds.

The owner of land has a right to mortgage as a chattel crops to be raised on the land.

The general rule, that a mortgagee of goods to be separated or to be acquired after the giving and recording of the mortgage must take possession of such goods after they are separated or acquired in order to protect his right to them against an attaching creditor or some other person claiming in the right of the mortgagor, does not apply to a mortgage of growing crops.

An owner of tobacco raising land in Agawam in 1919 made a contract with a group called an association by which he agreed to harvest and

deliver to it all of his marketable tobacco in such quantity and condition and at such times as the association might desire, and appointed the association his agent for the purpose of marketing according to the rules of the association all the tobacco which should be grown by him during the year 1919 and each year thereafter so long as the agreement might continue, and agreed that the association should have a first lien upon the tobacco for the payment of any indebtedness due from him to the association, that the amount of such indebtedness should be deducted from the net proceeds of any sale of tobacco, and that he would not sell nor otherwise dispose of his tobacco except through the association. In 1920 the owner gave a chattel mortgage on "All the tobacco now harvested and placed in tobacco sheds . . . [of certain numbers] in the town of Agawam, Massachusetts, or that may be placed therein from this year's cutting." The mortgagee acted in good faith and gave value, and had no notice of the contract with the association. The mortgage was duly recorded. The association went to expense under its contract with the owner and claimed a lien therefor prior to the mortgage lien. *Held*, that

(1) The contract with the association was not a sale;

(2) The circumstances did not justify the conclusion that the association had a right as against the mortgagee to be reimbursed for expenses;

(3) The mere fact that the property was left with the mortgagor did not give him implied authority to have the tobacco sorted and prepared for market at the expense of the mortgagee.

An agreement by one of two joint mortgagees of tobacco, made after foreclosure of the mortgage occurring over two years after the crop was harvested, that the amount of a debt already incurred to a third person by the mortgagor for the sorting of the tobacco might be deducted from the proceeds of a sale of the tobacco by the third person, was *held* to be without consideration and unenforceable.

BILL IN EQUITY, filed in the Superior Court on October 16, 1922, against the defendants described in the opinion, seeking to establish a lien upon the proceeds of the sale of tobacco grown by the defendant Hinckley in 1921.

The defendants Muzzy and Perkins filed a cross bill making no claim as to the "1921 crop" but seeking to establish a lien upon the proceeds of the sale of the "1920 crop."

The suit was referred to a master. Material facts found by him are described in the opinion. The defendants Hampden County Tobacco Growers' Association, Incorporated, and Hampden National Bank filed exceptions and objections to the report. Pending a hearing of the exceptions, the defendant Muzzy died and the administrator of his estate, Joseph Cushing, was admitted as a party in his stead.

The suit was heard upon the master's report and exceptions thereto by *Weed*, J.   He found and ruled that claims of the association and of Muzzy and Perkins were entitled to priority over the claim of the plaintiff and that such claims exceeded the proceeds of the sales of both crops.   He also found and ruled as follows:

"Upon the facts found by the master, the association had, by virtue of its contract with Hinckley and its possession of the two crops thereunder, a lien thereon for any indebtedness of any kind owing by Hinckley to the association, and has a right to deduct said indebtedness from said proceeds, save only to the extent that the plaintiff and the defendants Muzzy and Perkins, have intervening or superior rights.

"In my opinion the Muzzy and Perkins mortgage was a valid mortgage of Hinckley's 1920 crop, taken by the mortgagees in good faith, for value and without notice of Hinckley's contract with the association relative to said crop. Muzzy's request that Hinckley sell the tobacco did not authorize Hinckley to subject the tobacco to any lien for sorting or other charges.   Nor did the fact that the mortgagor was allowed to remain in possession after default imply such authority.   The services, for which the association's sorting charges were made, were performed for Hinckley long before the foreclosure, and were his personal obligations. Moreover, the association was charged with notice of the mortgage, and that the mortgagees had a right to judge for themselves whether or not the tobacco should be sorted and conditioned for the market and by whom.   Muzzy had no authority after the foreclosure to bind Perkins to pay the sorting charges due the association from Hinckley, and there was no consideration for the agreement made by Muzzy as found by the master, that the tobacco was to be sold by the association on condition that the sorting notes were to be deducted from the proceeds.   Muzzy and Perkins are therefore entitled to be paid out of the proceeds of the 1920 crop the sum of $10,000, with interest from August 3, 1920. Such payment will exhaust the entire proceeds of the 1920 crop."

An interlocutory decree overruling the exceptions to the

master's report and confirming the report and a final decree ordering the payment to Perkins and to the administrator of the estate of Muzzy of the proceeds of the sale of the "1920 crop" were entered by order of the judge. The defendant association appealed from both decrees.

The case was submitted on briefs.

*H. W. Ely, J. B. Ely, & A. S. Kniel,* for Hampden County Tobacco Growers' Association, Incorporated.

*S. M. Robson,* for Joseph Cushing, administrator, and Henry J. Perkins.

SANDERSON, J. This is a bill in equity brought by the West Springfield Trust Company against Harry P. Hinckley, the Hampden County Tobacco Growers' Association, Incorporated (hereinafter called the association), Fred E. Muzzy, Henry J. Perkins, and the Hampden National Bank. A cross bill was filed by Muzzy and Perkins against the other parties to the original suit. The case was referred to a master who made a report which was confirmed. A decree dismissing the original bill was entered from which no appeal was taken. The association appealed from an interlocutory decree on the cross bill overruling its exceptions and confirming the master's report, and from a final decree on the cross bill in favor of Muzzy and Perkins, hereinafter called the plaintiffs.

Hinckley was the owner of certain land in Agawam on which, during the years 1919, 1920 and 1921, he cultivated tobacco. On March 7, 1919, he entered into a contract with the association agreeing to harvest and deliver to it all of his marketable tobacco in such quantity and condition and at such times as the association might desire, and appointing the association his agent for the purpose of marketing according to the rules of the association all the tobacco which should be grown by him during the year 1919 and each year thereafter so long as the agreement might continue. It was further agreed that any indebtedness due from Hinckley to the association should be a first lien upon the tobacco and should be deducted from the net proceeds of any sale of tobacco. Hinckley also agreed that he would not sell or otherwise dispose of his tobacco except through the asso-

ciation and the association agreed to pay him the amount received less the uniform charges for marketing.   The association was given the right in case Hinckley failed to fulfil any of the provisions of the contract to take exclusive possession and control of the tobacco and market the same.

On August 3, 1920, Hinckley gave a chattel mortgage in the usual form to Muzzy and Perkins on "All the tobacco now harvested and placed in tobacco sheds numbered one (1), two (2), three (3), four (4) and five (5), in the town of Agawam, Massachusetts, or that may be placed therein from this year's cutting."   The locations of these sheds were set forth in the mortgage.   This mortgage was given to secure the mortgagees for indorsing Hinckley's note for $10,000 and interest, and was duly recorded.   The note secured by the mortgage was finally paid by Muzzy and Perkins in equal shares.   In October, 1922, the mortgage was foreclosed for breach of condition and the property bid in by the attorney for the mortgagees for $8,000.   Later, by agreement of all parties, the tobacco was sold by the association and the proceeds held to await the outcome of this suit.   From the proceeds of the sale the association paid certain claims and the balance was held by the Hampden National Bank on two certificates of deposit.   These proceeds of the sale were no more than sufficient to settle the indebtedness which the mortgage was given to secure.

It was contended by the association that, because of certain rights growing out of the contract with Hinckley hereinbefore referred to, it might retain a portion of the proceeds to settle its claims against him.   The plaintiffs in the cross bill, however, contend that their rights are superior to those of the association because of their title under the mortgage.   The question to be decided is that of priority of rights as between the association under its contract, and Muzzy and Perkins under their mortgage.

It is necessary to decide at the outset to what uncut tobacco the mortgage refers.   From the master's report and the inferences to be drawn therefrom, it is apparent that Hinckley's 1920 crop of tobacco went into the designated sheds and then was removed by Hinckley to the premises

of the association; that his crop was kept separate and distinct from that of others, except a part made into cigars; that at the time when the mortgage was given, Muzzy, one of the mortgagees, inspected the tobacco and had an impression as to the relative amount that was cut and in the sheds. The master found that about one fifth of the crop was then cut or in the sheds and that the rest of the crop was in the ground, though nearly grown. He also found that the tobacco sold and covered by the description in the mortgage brought $11,087.80.

It appears from the report that the mortgage was in the usual form of chattel mortgage. A mortgage in that form contains a covenant of ownership of and a right to sell the property mortgaged. The mortgage also provided that the goods were not without the consent of the mortgagee to be removed from "said locations," referring to the sheds in Agawam. In an action begun before the sales act (G. L. c. 106), the court said: "It is conceded that at the time the wool was sold and delivered nothing was said as to the defendant's ownership. But by having possession, coupled with the act of sale, he represented himself to be the owner with the legal right of disposal, and this conduct was equivalent to an implied warranty of title in him." *Hartley* v. *Rotman*, 200 Mass. 372, 376. The description in a mortgage may be aided by the presumption that the mortgagor is the owner of the property. *Joslyn* v. *Moose River Lumber Co.* 83 Vt. 49. When the covenant as to ownership in the mortgage in question is considered in connection with this presumption, it must be held, in the opinion of a majority of the court, that the mortgage referred to the 1920 growing crop of the mortgagor which had been or thereafter would be placed in the designated sheds.

Growing crops are treated as chattels. *Commonwealth* v. *Galatta*, 228 Mass. 308, 311. The general rule is, that a person cannot grant or mortgage property of which he is not possessed and to which he has no title. But this rule has been so extended as to give a person a right to mortgage property of which he has the potential possession, like the wool growing on sheep which he owns at the time of the

grant, or the crops to be raised on the mortgagor's land. *Jones* v. *Richardson*, 10 Met. 481, 488. See also *Orcutt* v. *Moore*, 134 Mass. 48; *Taylor* v. *Barton Child Co.* 228 Mass. 126, 130; *Butt* v. *Ellett*, 19 Wall. 544; *Cumberland National Bank of Bridgeton* v. *Baker*, 12 Dick. 231. *Weil* v. *Flowers*, 109 N. C. 212. *Minnesota Linseed Oil Co.* v. *Maginnis*, 32 Minn. 193. *Wheeler* v. *Becker*, 68 Iowa, 723. *Briggs* v. *United States*, 143 U. S. 346, 353.

It is also a well established general rule that the recording of a mortgage of personal property does not protect the mortgagee if the articles mortgaged are not capable of being specifically designated and identified by written description or if "they require to be weighed, measured, counted off, or otherwise separated from other and larger parcels or quantities." *Bullock* v. *Williams*, 16 Pick. 33, 35. A mortgage of property to be acquired is treated as an executory agreement for a mortgage authorizing the contractee to take possession as soon as acquired, assuming that he does so before third persons acquire rights. *Chick* v. *Nute*, 176 Mass. 57. *Wasserman* v. *McDonnell*, 190 Mass. 326. There is no distinction in principle between goods to be separated and goods to be acquired. In either case the general rule is, that a mortgagee must take possession of such goods after they are separated or acquired to protect his right to them against an attaching creditor. But no such rule applies to a mortgage of crops to be raised. It is not necessary that the mortgagee take possession of them when they come into existence. The same reasoning that protects the rights of a mortgagee in a crop to be raised, protects his title under a mortgage of so much of the mortgagor's growing crop of a specified year as he puts into designated sheds, and the mortgagee's title to such property is protected as soon as it is placed in the sheds, without further act on the part of the mortgagee. A similar rule applies in the law of sales to the appropriation of unspecified goods. *Mitchell* v. *Le Clair*, 165 Mass. 308. In accordance with this principle it has been held in other jurisdictions that a mortgage of a part of a crop to be set apart at threshing time will pass the property when set apart, *Potts* v. *Newell*, 22 Minn. 561,

and that a mortgage of a specified number of bales of cotton growing on a plantation and cultivated by the mortgagor to be delivered at a warehouse on or before a stated date is a sufficient description to pass title if it appears that that number of bales of the cotton so grown were so delivered at the warehouse, *Stephens* v. *Tucker*, 55 Ga. 543, and that a mortgage of cotton to the extent of one hundred bales of the first cotton picked on a certain plantation was a sufficient designation of the property mortgaged. *Comer* v. *Lehman, Durr & Co.* 87 Ala. 362. In *Claflin* v. *Carpenter*, 4 Met. 580, the court in speaking of a mortgage of growing wood and timber said, "We are . . . of opinion that the mortgage . . . was a mortgage of personal property, to take effect as such, when the wood and timber should be severed from the freehold." The case of *Winslow* v. *Merchants Ins. Co.* 4 Met. 306, is distinguishable in its facts from the case at bar.

Hinckley had a right to mortgage his tobacco which had been harvested and also his uncut growing crop. Upon the facts, the judge was justified in reaching the conclusion that the Muzzy and Perkins mortgage was a valid mortgage of Hinckley's 1920 crop, taken by mortgagees in good faith for value and without notice of Hinckley's contract with the association relative to the crop. The contract with the association was not a sale of Hinckley's tobacco to it. The recording of the mortgage was constructive notice to the association of a prior lien, and the circumstances do not justify the conclusion that the association had a right as against Muzzy and Perkins to be reimbursed for expenses. Hinckley was not authorized by the mortgagees either expressly or impliedly to incur the curing and other charges of the association against the tobacco. The mere fact that the property was left with the mortgagor did not give him implied authority to have the tobacco sorted and prepared for market. In *Guaranty Security Corp.* v. *Brophy*, 243 Mass. 597, the mortgagor was given the right to use the automobile, from which authority to repair was implied. There was no consideration for Muzzy's agreement after foreclosure sale to have the sorting charges, incurred long before, taken out of the proceeds of the sale by the associa-

tion. Inasmuch as the amount due Muzzy and Perkins will exhaust the entire proceeds of the sale of the crop of 1920, and their rights are established to these proceeds, other questions argued need not be further considered.

*Decree affirmed with costs.*