MASSACHUSETTS GASOLINE AND OIL COMPANY & others *vs.* THE GO-GAS COMPANY & others.

Worcester.    January 19, 20, 1927. — May 21, 1927.

Present: RUGG, C.J., CROSBY, PIERCE, & WAIT, JJ.

*Contract,* Construction.    *Lien,* Equitable.

Trustees under a trust established for the carrying out of a plan for a chain of gasoline filling stations, located in various Massachusetts towns and cities and elsewhere, before the acquiring of any real estate upon which to erect them, sought to raise money for their purpose by the advance sale of so called participating operation certificates, inducing each person who was willing so to invest to execute a written application stating: "I subscribe for one $500 Participating Operation Certificate in a service station to be established at . . . [a named location] and agree to pay the pre-installation price of $250 on demand, which sum shall be deposited in the . . . Bank subject to your check at once. Said certificate to be issued to me subject to the terms and conditions therein set forth, a specimen of which I have read and understand. It is agreed that . . . if for any reason you should decide not to build this station, all payments that I have made you shall be returned to me. It is understood [lien clauses] that if for any reason, this station should be sold or transferred by you, such sale or transfer shall be made subject to carrying out in full the conditions and agreements set forth in this application and the Participating Operation Certificate. It is agreed that . . . this application and the Participating Operation Certificate constitute my entire agreement with you . . . ." Upon such application the trustees issued certificates not under seal in which they agreed "to create a fund from the operation of a so called service station for the retail sale of gasoline, other petroleum products or other merchandise in the place designated upon the reverse side hereof and to distribute said fund in the manner hereinafter set forth to the registered owner of this certificate and all other registered owners of such certificates in the said station, and such distribution shall continue until there shall have been paid on this certificate the sum of $500 whereupon it shall become null and void. To provide the fund hereinbefore mentioned, from the receipts of said stations there shall be set aside in a bank one cent on each gallon of gasoline and

five per cent on all other merchandise sold by said station, and the fund thus created shall be distributed every month among the registered holders of these certificates in said station as their interest may appear." From money thus acquired, the trustees and their successors procured real estate, one site in each of several communities, and later conveyed it to a corporation which they and their associates, who knew all the facts, formed for the purpose, the conveyance not referring to the "lien clauses" above quoted. The corporation afterwards mortgaged the real estate. *Held,* that

(1) The agreement, so far as one was contained in the application and certificate read together, did not create a contract which could operate by way of covenant, as it was not under seal;

(2) The contract, so far as it related to property real or personal afterward to be acquired by the trustees, did not transfer the property by way of mortgage to the plaintiffs immediately on the acquisition of the property which was purchased to be used in the conduct of the business out of which the fund to be distributed was expected to arise;

(3) There could not be an equitable lien on the real estate in the absence of an agreement to that end, unless there was a clear implication from the conduct and dealing of the parties that such was their intention;

(4) The circumstances disclosed no situation which raised a presumption that the trustees and the certificate holders intended that a lien should attach to the properties of the trustees as soon as they should be purchased with money received from the sale of the certificates.

BILL IN EQUITY, filed in the Superior Court on July 20, 1926, and afterwards repeatedly amended, described in the last amended form in the opinion.

Demurrers by the defendants Equitable Trust Company of New York, Warner-Quinlan Company, Frank Frankel, Morris Frankel and George Frankel to the substituted supplemental bill as afterwards amended were heard by *Cox,* J., and were sustained, and the case was reported to this court on the stipulation stated in the opinion.

*H. W. Blake,* for the plaintiffs.

*L. Brown,* (*E. Field* with him,) for the defendants.

PIERCE, J.   This is a bill in equity, brought by the plaintiffs in behalf of themselves and all other holders of certain securities called participating operation certificates, issued by the predecessors in title of the defendants. The principal relief sought is the establishment of an equitable lien or liens upon certain parcels of land of the defendant The Go-Gas Company, which are subject to a mortgage to the defendant Equitable Trust Company of New York, as trustee for cer-

tain bondholders also named as defendants. The amended supplemental bill is substituted for and supersedes the original bill, as previously amended, as to the defendants Equitable Trust Company of New York, Warner-Quinlan Company, Frank Frankel, Morris Frankel and George Frankel.

The amended supplemental bill alleges in substance as follows: During the calendar years 1921, 1922 and 1923, three individuals, then doing business as trustees under a declaration of trust in which persons other than the plaintiffs held shares of a different nature from those of the plaintiffs, formulated a plan for establishing a chain of gasoline filling stations located in various Massachusetts towns and cities, and elsewhere. At the time of the plan the trustees owned no such stations nor any real estate upon which to erect them, but proceeded to raise the money for acquiring the sites and for construction by the advance sale of so called participating operation certificates to the plaintiffs and others to about the number of sixty in each locality. Some of the stations are located upon land owned by The Go-Gas Company, and others upon land held by it under long term leases. The defendant Equitable Trust Company of New York holds a mortgage purporting to cover all stations owned or leased, and the bonds issued under this mortgage were to be held by the Warner-Quinlan Company or the Messrs. Frankel. All the filling stations were built of the same size and according to the same plan, and with an electric sign permanently displaying the words "Go-Gas." Only one retail station was located in each city or town where a station was established at all, with the exception of the city of Fitchburg, in which two stations were located.

The bill contained a copy of the notice received by the plaintiffs relating to the pendency of the proceedings for the authorization of the mortgage by the United States District Court for the District of Delaware; and a prayer, among others, that all certificates that fail for any reason to be entitled to a lien upon the stations may be given an accounting. The certificates which were issued were all in the same form,

except for the changes necessary to adapt them to the individual case, and each set out the agreement of the trustees as follows: The Consumers Service Stations, Consolidated, "agrees to create a fund from the operation of a so called service station for the retail sale of gasoline, other petroleum products or other merchandise in the place designated on the reverse side hereof, and to distribute said fund in the manner hereinafter set forth to the registered owner of this certificate and all other registered owners of such certificates in the said station, and such distribution shall continue until there shall have been paid on this certificate the sum of Five Hundred Dollars whereupon it shall become null and void. To provide the fund hereinbefore mentioned, from the receipts of said station there shall be set aside in a bank one cent (1c.) on each gallon of gasoline and five per cent (5%) on all other merchandise sold by said station, and the fund thus created shall be distributed every month among the registered holders of these certificates in said station as their interest may appear.   This certificate is registered in the name of the owner on the books of this organization and such registration is endorsed hereon, and no transfer shall be binding on this organization unless made on the books of the Trustees at the request of the registered owner and similarly endorsed thereon."

Each person at the time of making payments was induced by the trustees to execute a written application. About sixty-two per cent of these, except for the preliminary and concluding phrases, read as follows: "I hereby subscribe for one (1) $500.00 Participating Operation Certificate in a service station to be established at Athol, Mass. and agree to pay the pre-installation price of $250.00 on demand, which sum shall be deposited in the Millers River Nat. Bank subject to your check at once.   Said certificate to be issued to me subject to the terms and conditions therein set forth, a specimen of which I have read and understand.   It is agreed that the style, location, management and all details of said station shall be determined by the architectural and operation departments, respectively of your. Company and if for any reason you should decide not to build this

station, all payments that I have made you shall be returned to me. [Lien clause] It is understood that if for any reason, this station should be sold or transferred by you, such sale or transfer shall be made subject to carrying out in full the conditions and agreements set forth in this application and the Participating Operation Certificate. It is agreed that there are no written or verbal agreements not herein contained and that this application and the Participating Operation Certificate constitute my entire agreement with you and that same is not subject to cancellation and is not binding on your Company until same is accepted at one of its offices." The balance were identically in the same language, but the "lien clause" was omitted.

The trustees received from the sale of certificates against stations located in this Commonwealth $365,375, and expended therefrom $327,965.67 in acquiring sites, some of which were owned and others leased, and in erecting stations. Title to each site was taken in the name of one of the agents of the trustees. In March, 1921, the declaration of trust was amended by the inclusion of additional trustees, all of whom had full knowledge of the provisions of the applications and the terms of the certificates. On February 7, 1923, the trustees and various other persons, all of whom had full knowledge of the facts relating to the applications, acceptances and issue of certificates, caused the defendant The Go-Gas Company to be organized under the laws of the State of Delaware, and soon afterwards conveyed or caused to be conveyed to said corporation all of the assets of the trust, including the filling stations and the land upon which the same were situated. The conveyance of the trustees to the defendant corporation does not refer to the agreement in the application, called in the bill the "lien clause"; but the corporation took such conveyances with full knowledge of the conditions and agreements, assumed the obligations, and commenced in good faith to carry out the same until about March 1, 1924, when it suspended, and has never resumed or made any effort to resume, carrying out the conditions and agreements. Substantial balances are

due to the plaintiffs and others similarly situated upon the participating operation certificates.

In February, 1925, The Go-Gas Company became financially embarrassed and receivers were appointed in all Federal districts in which any assets of the company were situated. On October 30, 1925, while the company was still in receivership, the defendant Warner-Quinlan Company made an offer to purchase an issue of bonds to be secured by mortgage or deed of trust of the assets of the company. The offer, a copy of which was given to the plaintiffs and those similarly situated, with a notice thereof by the United States District Court for the District of Massachusetts, in substance provided for a purchase from The Go-Gas Company of an issue of bonds to be secured by a "closed mortgage on all of the physical assets of the said Go Gas Company." The bonds were to run for the term of ten years, maturing on December 31, 1935. Clause (b) provided in substance that "the proceeds from sales of, and all moneys received from, any property covered by said mortgage, other than from the normal operation of the business of the Go Gas Company, shall be paid to the Trustee under said mortgage, and used for the immediate redemption of such bonds by purchase or call." No provision was made for any payment to certificate holders unless and until the bonds were paid. For the entire issue of bonds ($700,000) the Warner-Quinlan Company undertook to advance $560,000; and upon the approval of the financing plan by the United States District Court for the District of Delaware, did advance a sum of at least $560,000. The offer in terms involved no alteration in the corporate structure of The Go-Gas Company, and did not purport to affect or change the status of the stockholders, certificate holders, or other persons having no provable claims against The Go-Gas Company.

The bill alleges that, before the petition was presented to the United States District Court for the District of Delaware, representatives of Warner-Quinlan Company stated to representatives of the plaintiffs that it was formulating a plan for ending the receivership of The Go-Gas Company in such a way that all outstanding securities of that company would

remain intact and in force and unimpaired; and that later, at the hearings upon said petition in the district courts, said representatives repeated said statements in response to inquiries of presiding judges, and the plaintiffs believed said statements and relied upon them; that in consequence no opposition to the offer of the Warner-Quinlan Company was made and it was accepted by the voting stockholders and directors of The Go-Gas Company and received the approval of the various district courts; that on April 1, 1926, a mortgage and deed of trust securing an issue of bonds substantially in accordance with said offer were executed to the defendant Equitable Trust Company of New York and recorded in the various registries where recording was required; that the Warner-Quinlan Company and the Equitable Trust Company of New York "had full notice of all the facts relating to said Participating Operation Certificates and took said mortgage and bonds subject to all the equities of the plaintiffs and other holders of said certificates."

Upon the delivery of the bonds and mortgage, the receivers surrendered to the officials of The Go-Gas Company all property of The Go-Gas Company except moneys, and thereupon the existing liens were discharged and replaced by the lien of the new mortgage. The Go-Gas Company or Warner-Quinlan Company has advanced to the Massachusetts receiver sufficient money to pay all claims duly proved in the receivership proceedings except the principal of the purchase money mortgages, and the receiver has paid the claims in full including a mortgage of $108,000 not discharged of record.

The bill states the claim of the plaintiffs in these words: "And the plaintiffs are advised that the effect of the payments by them and their assignors and others similarly situated prior to the acquisition of any site for a station in each instance by said trustees, the execution by the plaintiffs . . . of said applications, the acceptance of the same by said trustees and the execution and delivery to the several plaintiffs . . . of the said Participating Operation Certificates was to subject each station so acquired and established . . . to a specific charge equal to one cent per gallon and

five per cent of all other products sold thereat for the satisfaction of said Participating Operation Certificates and that the plaintiffs . . . thereby acquired a right in the nature of an equitable lien to have the obligations of said certificates carried out in full and if said carrying out is delayed for an unreasonable time to have said stations sold under the direction of the court and subject only to purchase money mortgages, provisions of leases, taxes and municipal liens and the proceeds of sale of each station divided among the holders of Participating Operation Certificates in each station free from all claims except those enumerated in this paragraph."

To this bill the Equitable Trust Company of New York, the Warner-Quinlan Company and Messrs. Frankel filed demurrers in precisely the same language. Thereupon it was stipulated that two questions only were raised by the demurrers: "a. Did the making and issue upon the application and under the circumstances described in the bill of the certificates therein referred to create an equitable lien or right in the nature of an equitable lien, upon the land and buildings subsequently acquired by the Consumers Service Stations, Consolidated, such as to bind them in the hands of subsequent purchasers or mortgagees who took with notice of the facts? [and] b. Assuming that such an equitable lien or right in the nature of an equitable lien was created, are the plaintiffs, upon the allegations of the bill, estopped from now seeking to assert it?" The judge sustained the demurrers upon issue "a" and overruled them on issue "b," and reported the case to this court subject to the stipulation of the parties to the effect that the bill is to be dismissed if he was right in his rulings upon issue "a"; if he was wrong in that ruling and wrong in his ruling as to "b" the bill is to be dismissed; if he was wrong in his first ruling and right as to his second the case is to stand for further hearing as to the Equitable Trust Company of New York, Warner-Quinlan Company, Frank Frankel, Morris Frankel and George Frankel.

The claim of the plaintiffs to assert an equitable lien or charge upon lands and buildings which were acquired by the

Consumers Service Stations, Consolidated, after the issue of the certificates to them rests upon their assumption that the applications signed by them alone for participating operation certificates in named service stations were incorporated by inferential reference in the certificates signed, but not sealed, by the trustees of the Consumers Service Stations, Consolidated. The certificates contain no reference to land, and no agreement or covenant of any sort as to land or to interest in land; they contain an agreement to create a fund from the operation of a service station for the sale of gasoline, petroleum products and other merchandise, in a designated city or town, to distribute that fund among the registered holders of certificates, and that the distribution shall continue until there has been paid on each certificate $500.

It is the contention of the plaintiffs that the scheme required the contemplated stations, when acquired, should remain in the control of the trustees long enough to enable them to accomplish the undertaking; and that a court of equity would compel the trustees to perform their obligation or give back the money paid for the certificates. The agreement, so far as one is contained in the application and certificate read together, does not create a contract which can operate by way of covenant, as it was not under seal. The contract, so far as it relates to property real or personal afterward to be acquired by the trustees, did not transfer the property by way of mortgage to the plaintiffs immediately on the acquisition of the property which was purchased to be used in the conduct of the business out of which the fund to be distributed was expected to arise. In this Commonwealth a mortgage of real or personal property to be acquired does not attach to that property, at law or in equity, as it comes into the hands of the mortgagor, *Russ* v. *Alpaugh,* 118 Mass. 369, 376, *Davis* v. *Smith-Springfield Body Corp.* 250 Mass. 278, 283, *West Springfield Trust Co.* v. *Hinckley,* 258 Mass. 157; and where an instrument is not under seal, there can be no estoppel by deed.

There cannot be an equitable lien on real estate or personal property in the absence of an agreement to that end, unless

there is a clear implication from the conduct and dealing of the parties that such was their intention.  *Westall* v. *Wood,* 212 Mass. 540.  It is plain that here there was no express agreement.  The question is, Have the plaintiffs in the circumstances of these transactions shown a situation which raises a presumption that the trustees and the plaintiffs intended that a lien should attach to the properties of the trustees as soon as they should be purchased with money received from the sale of the certificates?  *Pinch* v. *Anthony,* 8 Allen, 536.  *Elmore* v. *Symonds,* 183 Mass. 321.  *Coram* v. *Davis,* 209 Mass. 229.  *Westall* v. *Wood, supra.*  We think not.  The case of *Connecticut Co.* v. *New York, New Haven & Hartford Railroad,* 94 Conn. 13, 29, quoted nearly in full and relied on by the plaintiffs, is distinguishable from the case at bar in that there was an absolute covenant there that "if and when a mortgage is given, these debentures shall be brought under the wing of its security"; that the agreement was in the form of a covenant; and in the application to the facts of that case of the principle of *Holroyd* v. *Marshall,* 10 H. L. Cas. 191, and *Tailby* v. *Official Receiver,* L. R. 13 App. Cas. 523, which principle is not followed in this Commonwealth.  The provision in the application for the issuance of certificates, that it "is understood that if for any reason, this station should be sold or transferred by you, such sale or transfer shall be made subject to carrying out in full the conditions and agreements set forth in this application and the Participating Operation Certificate," did not create a charge on the property conveyed which did not attach to it while the title was in the trustees.  It had the effect, at most, of a notice to The Go-Gas Company of a claimed or actual equitable lien or charge on the property conveyed, which was enforceable against The Go-Gas Company and all persons claiming under it with notice of the lien.

The judge was right in his rulings as to the first issue, and it results from the stipulation that the entry is to be

*Bill dismissed.*