**In re RICE CHOCOLATE CO.**

No. 62563.

District Court, D. Massachusetts.

Jan. 6, 1941.

Harold Horvitz, of Boston, Mass., for trustee in bankruptcy.

Arthur P. Stone, of Boston, Mass., for Charles D. Rice and others, mortgagees.

BREWSTER, District Judge.

The referee's certificate in the above-entitled matter presents for consideration two questions: First, whether a mortgage of personal property was void for want of proper record, and, second, if valid, whether the mortgagee or trustee in bankruptcy is entitled to certain after-acquired property. By agreement of the parties the property has been sold and the proceeds held to await the outcome of this litigation.

First as to the validity of the mortgage. The Massachusetts statutes provide that "Mortgages of personal property shall, within fifteen days from the date written in the mortgage, be recorded on the records of the town where the mortgagor resides when the mortgage is made, and on the records of the town where he then principally transacts his business. * * * The mortgage shall not be valid against a person other than the parties thereto until so recorded; * * *." Massachusetts Gen.Laws (Ter. Ed.) Ch. 255, Sec. 1. It has been held that a trustee in bankruptcy is not a party within the meaning of this section. Duffy v. Charak, 236 U.S. 97, 35 S.Ct. 264, 59 L.Ed. 483. The facts are not in dispute.

The bankrupt is a corporation organized under the laws of Massachusetts in 1914. In its agreement of association and articles of organization, it gave the location of its principal office as the city of Boston. Its business was carried on in Boston until 1925 when it transferred its business activities to Everett, Massachusetts. Since 1926, it has had no factory or property of any kind in Boston, has maintained no salesroom or office for any purpose, no mailing address or telephone in that city. In its annual returns to the state, and in other corporate papers filed with the Commissioner of Corporations, it certified that its principal office was in Everett. Its meetings of directors and stockholders were held at different places within the Commonwealth other than Everett. Whether any .of these meetings were held in Boston since 1926 is not clear but, if so, it is certain that they were not held in any office maintained by the corporation. It cannot be said that since 1926 the bankrupt had maintained even a nominal office in Boston where corporate business was transacted.

In 1934 it gave a mortgage to a trustee to secure an issue of bonds. The mortgage covered personal property. It was never recorded in Boston. It was duly recorded in the city of Everett and it is conceded that it was properly so recorded as the place where the bankrupt principally transacted its business. The trustee of bankrupt's estate contends, however, that the mortgage, in order to be valid, should have been recorded in the city of Boston as the place where the corporation resided. If the corporation can be said to have resided in Boston at the time the mortgage was given, it is void under the statute as against the trustee.

The statutes of Massachusetts prescribe that the agreement of association shall state the location of the principal office of the corporation in the Commonwealth. Massachusetts .General Laws (Ter.Ed.) Ch. 156, Sec. 6. These statutes further provide that by a majority vote of its stock it "may * * * authorize a change of the location of its principal office." Massachusetts General Laws (Ter.Ed.), Ch. 156, Sec. 41. Such action to be followed by "articles of amendment" filed with and approved by the Commissioner of Corporations. The amendment does not take effect until such articles of amendment shall have been filed. Massachusetts General Laws (Ter.Ed.) Ch. 156, Sec. 43. No vote of stockholders was ever taken to change the principal office of the corporation and, of course, no articles of amendment were filed.

It is argued by the trustee inasmuch as no corporate action was taken in accordance with the statutes above cited, it must be held that for the purposes of the recording statute the corporation "resided" in Boston when the mortgage was executed. He cites Fairbanks Steam Shovel Co. v. Wills, 240 U.S. 642, 36 S.Ct. 466, 468, 60 L.Ed. 841, in support of this contention. That case dealt with a corporation incorporated under the laws of Illinois and with the laws of that state respecting chattel mortgages. The facts were quite similar to those appearing in the case at bar except that the court referred to the fact that the bankrupt corporation nominally maintained an office in Chicago, although no books of account were kept nor any business transacted there. It was held that since the location of the principal office stated in its organization papers had not been changed by proper corporate action, it still remained the principal office of the company, and the county of the principal office must be deemed the county of the residence. The court quotes from Ex parte Schollenberger, 96 U.S. 369, 377, 24 L.Ed. 853, as follows: "A corporation cannot change its residence or its citizenship. It can have its legal home only at the place where it is located by or under the authority of its charter."

It also quotes from Galveston, Harrisburg & San Antonio Ry. Co. v. Gonzales, 151 U.S. 496, 504, 14 S.Ct. 401, 38 L.Ed. 248, where Mr. Justice Brown said: "In the case of a corporation the question of inhabitancy must be determined * * * by the principal offices of the corporation, where its books are kept and its corporate business is transacted, even though it may transact its most important business in another place."

The quotation from Ex parte Schollenberger, supra, to the effect that a corporation cannot change its residence or citizenship, read in the light of later decisions, can be held to mean no more than that a corporation cannot change its legal domicile except in accordance with its charter or the laws of the state where incorporated.

More recent decisions clearly indicate that the effect of the original desig-

nation by a corporation of its principal place of business is to fix its "domicile in law." It is now recognized that a corporation may have its legal domicile in one place and a residence in another. International Milling Co. v. Columbia Transportation Co., 292 U.S. 511, 54 S.Ct. 797, 78 L.Ed. 1396. In a very real sense it is a resident of the place where its corporate activities are carried on and its corporate functions performed. State of Missouri ex rel. St. Louis, Brownsville & M. R. Co. v. Taylor, 266 U.S. 200, 45 S.Ct. 47, 69 L.Ed. 247, 42 A.L.R. 1232.

The facts of the case at bar, when considered in the light of later authorities, lead to the conclusion that the bankrupt's place of residence was not Boston. This conclusion is compatible with Massachusetts cases. Collector of Taxes of Boston v. Proprietors of the Cemetery of Mount Auburn, 217 Mass. 286, 290, 104 N.E. 750; Federal Trust Co. v. Bristol County St. Ry. Co., 218 Mass. 367, 375, 105 N.E. 1064.

In the Mount Auburn case [217 Mass. 286, 104 N.E. 752], the court, speaking through Chief Justice Rugg, said: "It often has been held respecting a business corporation that its residence is in the place where its manufacturing, mercantile or other chief activities are carried on, and not where only its corporate or directors' meetings are held or its records are kept." See, also, Woodsum Steamboat Co. v. Sunapee, 74 N.H. 495, 69 A. 577.

It is to be noted that the Massachusetts statute respecting recording of mortgage of personal property when applied to a corporation does not require that the mortgage be recorded where the corporation maintains its principal office but only where it "resides" and where it "principally transacts * * * business."

It follows, therefore, that the failure to record the mortgage in Boston does not render the mortgage void, and the referee's action in upholding it as valid will be affirmed.

■ Coming to the question of the trustee's rights to the property acquired by the bankrupt after the date of the first mortgage which was executed November 1, 1934, the referee's findings show that on September 15, 1938, the bankrupt made an assignment for the benefit of its creditors. The assignee made a somewhat perfunctory attempt to take possession before the bankrupt executed a supplemental mortgage on September 23, 1938, to the mortgagee named in the original mortgage. I gather that the original mortgage purported to cover after-acquired property, and if the mortgagee had taken possession or had obtained the second conveyance of the after-acquired property before the rights of third parties had intervened, the mortgagee's title would prevail. Chick v. Nute, 176 Mass. 57, 57 N.E. 219; Wasserman v. McDonnell, 190 Mass. 326, 76 N.E. 959; West Springfield Trust Co. v. Hinckley, 258 Mass. 157, 163, 154 N.E. 580.

The question to be decided was whether the assignment for the benefit of creditors defeated the mortgagee's rights. If the assignee under the assignment acquired any interest in the after-acquired property by virtue of the assignment made prior to the supplemental mortgage, the trustee must be held to have a superior claim. Taylor v. Barton Child Co., 228 Mass. 126, 117 N.E. 43, L.R.A.1918A, 124; Wasserman v. McDonnell, supra.

I am of the opinion that the assignment operated to vest in the assignee such an interest in the after-acquired property that the subsequent mortgage was ineffective to give the mortgagee any rights in the property which will hold against the bankrupt's trustee. Robinson v. Wiley, 188 Mass. 533, 74 N.E. 923; Avery v. Monroe, 172 Mass. 132, 51 N.E. 452, 70 Am.St. Rep. 250; 6 Corpus Juris Secundum, Assignments for Benefit of Creditors, § 135, page 1310, § 163, page 1322.

Furthermore, the referee has found as a fact that the assignee took possession before the supplemental mortgage was executed and also that creditors had previously assented to the assignment. These facts compel the conclusion that the trustee is entitled to the proceeds derived from all the property acquired by the bankrupt subsequent to the mortgage of November 1, 1934.

The order of the referee of July 12, 1940, relative to the distribution of the proceeds of the property covered by the mortgage and the after-acquired property is affirmed.